637 A.2d 1029

**Raymond DeMARCHIS and Irma DeMarchis, His Wife,**

**v.**

**George D'AMICO and Mary D'Amico, His Wife, Appellants.**

**George D'AMICO and Mary D'Amico, His Wife, Appellants,**

**v.**

**Raymond DeMARCHIS and Irma DeMarchis, Individually and as Husband and Wife, and T/A DeMarchis Brothers and/or DeMarchis Servicenter.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1993.

Filed March 4, 1994.

Marcel L. Groen, Bensalem, for appellants.

Robert J. Rebstock, Philadelphia, for appellees.

Before ROWLEY, President Judge, and OLSZEWSKI and BECK, JJ.

ROWLEY, President Judge.

George D'Amico and his wife, Mary, (hereinafter "appellants") have appealed from a final decree in equity which was entered in favor of Raymond and Irma DeMarchis (hereinafter "appellees") following the trial of these actions, which were consolidated by the trial court. As stated in the trial court's opinion, appellants and appellees "have come before this Court to resolve disputes arising over alleged partnership agreements concerning an automobile repair business and the real estate and buildings it occupies." (Trial Court Opinion, 4/16/92, p. 1).

Appellants contend that they have been in partnership with appellees from 1964 to the present for the purpose of operating an automotive repair business, but that the land and improvements upon which the business is located is exclusively theirs, inasmuch as they alone hold record title to the realty. Appellees, on the other hand, insisted in the trial court that they are the sole owners of the business but that they have a 50% interest in the land upon which the business is situated, as well as a 100% interest in the improvements thereon. On

appeal, however, they contend that the trial court's conclusion that they own an 83% interest in the land and improvements was correct.

The procedural background of this case is as follows. In 1987, appellees filed an action in equity against appellants, claiming that appellants were attempting to sell the land and buildings occupied by the business and that equitable relief was necessary to prevent appellants from being unjustly enriched in the event that a sale of said property should be accomplished. Appellees requested, *inter alia,* that the court enter an order declaring a constructive trust on the land in favor of appellees and awarding them 50% of the proceeds from the sale of the land, and all of the proceeds of the sale of the buildings on the land, as well as the repair business itself.

Appellants filed an answer, new matter and counterclaim, averring that "in approximately 1964, [appellants and appellees] entered into an agreement whereby [appellees] would operate an automotive service center with related services, on the property owned by [appellants] and would pay to [appellants] a full one half (½) partnership share of the profits [from the business] in lieu of rent." In their prayer for relief, appellants requested a full accounting of the profits of the business from 1964 to the present and a one-half share of those profits, or in the alternative, the fair rental value of the property, plus interest, from 1964 to the present. It does not appear that appellees filed a response to either appellant's counterclaim or new matter.

Thereafter, the record indicates that no action was taken by the parties for two years. On April 5, 1989, appellants filed an action in ejectment against appellees, asserting that the business used appellants' property from 1964 to the present without honoring "an agreement whereby [appellees] would operate the service center and related services on the property owned by [appellants] and would pay to [appellants] [a] full one-half (½) partnership share of the profits [from the business] in lieu of rent. . . ." Appellants requested, *inter alia,* that the trial court enter an order giving them a fair and equitable share of the business profits, with interest, or in the

alternative, the fair rental value of the property from 1964 to the present, with interest.

Appellees then filed preliminary objections to appellants' complaint, contending that it should be dismissed because it merely reiterated the claim already advanced by appellants in their counterclaim to appellees' complaint. The trial court then consolidated the two cases for trial upon the motion of appellants. It does not appear from our review of the record that appellees ever filed an answer to appellants' complaint.

, The trial commenced on February 12, 1991 and was concluded on February 14, 1991. As plaintiffs in the first action, appellees presented their case-in-chief on the first two days of trial. Both appellees testified, as did their real estate expert. At the close of the second day of trial, appellees rested their case. The next day, appellants were to present evidence in support of their counterclaim for lost profits, or alternatively, lost rent. However, appellants did not appear in court to present any such evidence. After diligent, but unsuccessful, efforts to locate them, the trial proceeded to a close without the presence of appellants. All of the record evidence was provided by appellees.

Following trial, both sides to this dispute filed proposed findings of fact and conclusions of law, as requested by the trial court. On April 16 of the following year, 1992, the trial court entered a *decree nisi* and an opinion containing findings of fact and conclusions of law. The trial court concluded that "[appellants] have no partnership interest in the DeMarchis Servicenter and that [appellee husband] has an 83% partnership interest and [appellants] have a 17% partnership interest in the real estate and its improvements."

On April 27, 1992, appellants filed exceptions to the trial court's findings of fact, conclusions of law, and *decree nisi*. Almost another year later, on April 15, 1993, the exceptions filed by appellants were denied by the trial court and the *decree nisi* was entered as the final decree. Appellants then filed the instant timely appeal.

## I.

The factual underpinnings of this case, which follow, are not in dispute because appellees were the only ones to present evidence at trial. Appellant wife, Mary D'Amico, and appellee husband, Raymond DeMarchis, are siblings. Prior to 1964, Chester and Johnny DeMarchis, also siblings of Mary and Raymond, operated a scrap yard business out of a small building located on land owned by appellants, tax parcel 4–5–4. Appellants purchased that parcel in 1947.

In 1964, appellants and appellees bought the scrap business known as "DeMarchis Brothers" from Johnny and Chester. There are no writings evidencing the terms of this "buy-out" nor is there any indication of record as to the consideration which was paid by the parties in the transaction. The trial court found as a fact that the business was purchased by the parties for the purpose of starting a "new venture" between appellants and appellees. Shortly after "DeMarchis Brothers" was purchased by the parties, the salvage business was discontinued, and the automotive repair business was begun. The name "DeMarchis Brothers" was retained.

Appellee husband was the primary employee of the new "DeMarchis Brothers," and as such, he performed the automobile repair work and managed the daily operations of the business. He received a salary from the business as a result of his labor. Appellants did not involve themselves in the day-to-day operations of the repair shop, although they were *consulted* from time to time by appellee husband.

In 1965, appellees bought a narrow strip of land, tax parcel 4–5–8, which is adjacent to the land upon which the business was located. That narrow strip of land provides ingress and egress for tractor trailers from Old Route 13 to the repair shop. Passenger vehicles can enter the premises via an entrance located on tax parcel 4–5–4, whereas tractor trailers can not.

From the beginning of the repair business until the present, appellees have paid for the expenses of the business, including

liability insurance premiums out of profits from the business [1]. Appellants, who are the record title owners of the real estate upon which the business is located, paid the real estate taxes from 1964 until 1968 or 1969, when appellees began paying them out of business profits.

In 1972, appellants and appellees borrowed $48,000.00 from Fidelity Bank in order to build a larger garage on tax parcel 4-5-4, which would permit expansion of the business. All four parties, Mary, George, Ray, and Irma, signed the loan documents and all four were personally responsible for the loan's repayment. All loan payments were made from the proceeds of the business and in April of 1981, the loan was fully satisfied.

After the new garage was built, there were a number of additions and improvements required for it to be certified as a State Inspection unit. In making these improvements, which included the installation of hydraulic lifts and a 14 × 14 foot garage door, appellees expended approximately $67,000.00 out of business income.

Thereafter, in 1977, due to a lucrative contract which was acquired by the business for the repair of tractor trailers, appellees and appellants decided to further improve the real estate by constructing an addition to the large garage which was constructed in 1972. The parties applied to Fidelity Bank for a $60,000.00 loan to finance the addition, but the bank refused to approve the loan because the narrow parcel of land which provided tractor trailer access to the business was recorded solely in the names of appellees, while the land on which the buildings that house the business is situated was recorded exclusively in the names of appellants. The parties

---

1. Although the record is not entirely clear as to whether each and every business expense was paid out of business proceeds, there is testimony to the effect that loans taken out by the parties for the business were paid off with business proceeds. There is no positive testimony that any of the business expenses were paid out of the *personal* funds of appellees. As will shortly be seen, it was appellees burden to overcome the *prima facie* evidence that a partnership existed such that the lack of any evidence to the effect that business expenses were paid by appellees personally must be held against them.

were told that the bank would not grant the loan unless the two separately owned parcels, 4–5–4 and 4–5–8, were joined into one deed.

As a result of the Bank's decision, appellees transferred title to the narrow strip of land, tax parcel 4–5–8, to appellants for $1.00 consideration. The trial court found as a fact that the land was transferred to appellants with an understanding between the parties that the two parcels would be merged into one, with all four names to appear on a new deed. However, for reasons which do not appear of record, a new deed placing title to both tracts in the names of all four parties was never prepared. The loan was nevertheless issued by the bank in all four names. All payments on the $60,000.00 loan were made from the proceeds of the business and the loan was fully satisfied in May of 1989.

In 1980, appellants approached appellees, seeking a distribution of profits for the first time since the business' inception. In response to appellants' request, $40,000.00 was withdrawn from proceeds of the business which had been deposited in an investment account. Of the sum withdrawn, appellants received $20,000.00 and appellees received $20,000.00.

Throughout the years of the business' operation, the parties discussed the possibility of a "buy-out" because appellants offered to sell their interest in the "property" to appellees. However, each time the subject was raised, appellees rejected the idea because they did not believe they could afford it. In 1982, the automotive repair business known as "DeMarchis Brothers" was incorporated as "DeMarchis Servicenter[2]."

In 1987 and 1989, respectively, the instant lawsuits were filed. Sometime thereafter, appellants began interfering with appellees' operation of the repair business. The Bristol Police

2. Appellee husband is the President of the corporation known as "DeMarchis Servicenter," and until her death, appellee wife was its Secretary/Treasurer. There is nothing of record to indicate who the shareholders of the corporation are, nor is there anything to indicate the identity of any other corporate officers which may exist. None of the parties have made an issue of this event and we, for that reason, decline to consider what effect, if any, it may have on the respective rights of the parties.

were called in response to the disruptive behavior of appellants on three separate occasions. On one such occasion, appellants pulled their car up to the front door of the garage and refused to move it, physically blocking customers and employees from entering the business for almost an hour during business hours. On February 25, 1991, after the trial of this matter had been concluded, the trial court issued a permanent injunction ordering appellants to permanently cease, desist and refrain from acts calculated or expected to harass, intimidate, endanger or annoy appellees or customers and/or employees of the repair business [3].

As noted above, on appeal, appellants claim that the trial court erred as a matter of law in concluding that they do not have a partnership interest in the DeMarchis Servicenter, but that appellees have an 83% interest in the land, and its improvements, upon which the repair business is located. Appellants insist that they have a 50% interest in the business, and a 100% interest in the land and its improvements. Appellees contend that the trial court was correct in its conclusions as a matter of law.

## II.

Before addressing the merits of appellants' claims, we note that:

> "the scope of appellate review of a decree in equity is particularly limited, and that the findings of the Chancellor will not be reversed unless it appears that the Chancellor clearly committed an abuse of discretion or an error of law. Where credibility of witnesses is important to a determination, the findings of the Chancellor are entitled to particular weight because the Chancellor has the opportunity to observe their demeanor. Although an appeals court cannot sit as a trier of issues of fact and must accept the findings of fact of the [trial] court as the basis for its review, an appellate court is not bound to accept the findings of the

---

**3.** An appeal from the injunction was never filed by appellants and it is not an issue on appeal. We need not, therefore, address it further.

Chancellor which are without support in the record or have merely been derived from other facts. *Thus, the Chancellor's conclusions of law or fact which are derived from nothing more than reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable.* (citations omitted)."

*Dudash v. Dudash,* 313 Pa.Super. 547, 552–553, 460 A.2d 323, 326 (1983) (emphasis added).

■ Appellants first argument is that the trial court erred as a matter of law in concluding that they did not have a partnership interest in the automotive repair business. A question as to whether a partnership exists must be determined by reference to the parties' intent. As appellants note, this Court has stated that:

"[i]t is entrenched in the law of the Commonwealth that the existence of a partnership depends upon the intentions of the parties as to being partners and that no formal or written agreement need be executed in order for a valid partnership to exist. As the Pennsylvania Supreme Court ... opined:

There is no requirement that partnership agreements be in writing. They may be made orally or *may be found to exist by implication from all attending circumstances* (i.e., the manner in which the alleged partners actually conducted their business, etc.). *Murphy v. Burke,* 454 Pa. 391, 311 A.2d 904, at 907 (1973). (citations omitted)."

*Barbet v. Ostovar,* 273 Pa.Super. 256, 265, 417 A.2d 636, 641 (1979) (emphasis added).

■ In this case, despite its factual finding that the automotive repair business was purchased for the purpose of beginning a "new venture" between appellees and appellants, the trial court nevertheless arrived at the legal conclusion that a partnership did not exist between the parties for the operation of that business. In reaching this conclusion, the trial court erred as a matter of law by rejecting a crucial bit of *prima facie* evidence, which has not been rebutted, that compels the legal conclusion that a partnership existed.

*Prima facie* evidence is that which is "... good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, *and which if not rebutted or contradicted, will remain sufficient.*" The term has also been defined as "[a]n inference or presumption of law, affirmative or negative of a fact, in the absence of proof....to overcome the inference." Black's Law Dictionary 1071 (5th Ed.1979) (emphasis added).

In determining whether a partnership exists, 15 Pa.C.S.A. § 8312(4) provides that "[t]he receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business ..." In the instant case, the trial court found that $40,000.00 was withdrawn from an investment account containing proceeds of the business and appellants received $20,000.00 of that money. The trial court was required to view this fact as *prima facie* evidence that a partnership existed between appellants and appellees for the operation of the automotive repair business, which if unrebutted, would remain sufficient to establish the existence of a partnership. Once the evidence of a profit distribution was introduced, the burden of proof *shifted* to appellees, as the party denying the partnership's existence, to show that the payment was *not* a profit distribution, or that a partnership did not exist.

Section 8312(4) specifically sets forth examples of five situations in which *prima facie* evidence of a partnership, such as that present in the instant case, can be overcome or rebutted. In that regard, the statute provides that:

"no such inference [of a partnership] shall be drawn if the profits were received in payment:

(i) As a debt by installments or otherwise.

(ii) As wages of an employee or rent to a landlord.

(iii) As an annuity to a surviving spouse or representative of a deceased partner.

(iv) As interest on a loan though the amount of payment varies with the profits of the business.

(v) As the consideration for the sale of the goodwill of a business or other property by installments or otherwise."
1988, Dec. 21, P.L. 1444, No. 177, § 103, effective Oct. 1, 1989.

In the instant case, appellees have not provided any evidence that the 1980 withdrawal of profits fell into any of the five categories delineated by § 8312(4). Indeed, there was positive evidence that the one-time withdrawal of business profits in 1980 was *not* a payment for wages [4] or rent [5]. Thus, unless appellees could produce some other evidence to rebut the *prima facie* evidence that a partnership existed, we will be constrained to conclude that a partnership existed between appellants and appellees. Appellees did not present any such evidence, however; indeed, all of the evidence which they presented actually supported and strengthened the statutory inference that the parties were partners.

As gleaned from the testimony of appellees themselves, the trial court found the following facts: (1) *all four of the parties* bought the scrap yard business from Johnny and Chester DeMarchis in 1964 for the purpose of starting a new venture together; (2) *all four of the parties* were required to sign the loan documents which were executed in 1972 and 1977, yet all the payments on these loans were made out of the proceeds from the *business;* (3) appellees conveyed the small strip of land to appellants with the understanding that the two separately owned parcels of land would be merged in one parcel, with the new deed to bear *all four names;* (4) appellants supplied the land upon which the business was run without ever requesting or receiving any rent for over twenty years; and finally, (5) in 1980, when a portion of the profits from the business were withdrawn, they were distributed *equally* be-

---

**4.** While appellee husband did receive a salary of $410.00 or $420.00 per week for his full-time work as an employee of the business, such payments are not considered to be a distribution of profits under § 8312(4).

**5.** Appellees testified that they had never paid rent and further, that appellants had never requested that they do so in the twenty-eight years that the service shop had been in business. Therefore, the $20,000.00 distribution could not possibly fall under the exception to § 8312(4) dealing with rental payments.

tween appellants and appellees. All of these facts, together with the statutory *prima facie* case, show that a partnership existed between appellants and appellees with respect to the automotive repair business.

Because appellees have not pointed to anything of record which contradicts the statutory *prima facie* case that a partnership existed, or the inference of a partnership arising from the foregoing facts, we are constrained to conclude that the trial court erred as a matter of law in rejecting appellants' contention regarding the existence of a partnership in the repair business. We decide that the parties were in partnership and furthermore, that appellants' request for an accounting should be granted.

In arriving at this decision, we note that although the trial court found it significant that appellants approached appellees requesting a distribution in order that they could put "some money" down on a house, we do not find this in the least significant. The mere fact that appellants intended to and did use the money they received in the profit distribution for a down payment on a house does not in any way undermine the statutory inference that a partnership existed between the parties.

We also note that despite the trial court's heavy reliance upon appellants' failure to demand regular profit distributions as evidence that the parties were not partners, we do not find that fact to be of any consequence because appellees testified that they "never took any profits either." Our review of the record indicates an intention on the part of both appellants and appellees to re-invest the profits back into the business to foster its continued growth and success. We find that the actions of the parties in this regard are consistent with our holding that a partnership exists between the parties for the operation of the automotive repair business [6].

6. Although we have not relied upon it in arriving at our conclusion that a partnership exists between the parties in the instant case, we note with great interest that in paragraph six of appellees' complaint, it was averred that there was an "unwritten understanding" between the

## III.

Appellants' second issue concerns the trial court's legal conclusion that the evidence supports "... the existence of a partnership [in the real estate and its improvements] between the parties from the very beginning." (Trial Court Opinion, 4/16/92, p. 14) (emphasis added). The trial court decided that appellees have an 83% interest in parcels 4–5–4 and 4–5–8, and the improvements thereon, while appellants have only a 17% interest in those assets. Appellants claim that this conclusion is erroneous in that their names are the only ones listed on the deed to the subject property and therefore, they are entitled to a full 100% interest therein. In this regard, we do not wholeheartedly agree with either the trial court or appellants.

We do not agree with the trial court's conclusion that appellants and appellees were not in partnership with respect to the operation of the business, but were in partnership with regard to the real estate, and the improvements thereto. "A partnership is an association of two or more person to carry on as co-owners [of] a *business* for profit." 15 Pa.C.S.A. § 8311(a).

In this case, it is clear that both tax parcels and the various improvements thereto were all integral parts of the business and were intended to be assets of the business from its inception. First, we note that despite their record ownership of the land and small garage in which the original business was located, appellants never requested rent from appellees for the business' use of the premises from 1964 to the present. In the absence of any explanation from appellees as to why appellants were willing to forego over twenty years of rent, we believe this is strong evidence that appellants permitted the business to use tax parcel 4–5–4 in return for a portion of the profits of that business.

Secondly, in order to accommodate expansion of the business, appellants not only permitted the construction of a new,

parties that appellants "would share in some of the profits of [appellees'] business."

much larger building to house the business on the land, and later, an addition thereto, but they actually advanced their own credit, together with appellees, to obtain the financing necessary for said construction. Appellants were *jointly* liable for repayment of all loans taken out for expansion of the *business* premises.

Finally, although only appellants' names appear on the deeds to the subject property, the trial court found that appellees and appellants intended to merge their separately owned parcels of land into one large parcel, at the request of the lender, so that *all four parties* would own an interest in the land upon which the *business* was situated. In light of all these facts and in view of our conclusion that a partnership exists between the parties for the operation of the repair business, we are compelled to conclude that the property upon which the business is operated, and the improvements thereto, are partnership assets such that appellants and appellees are each entitled to an interest, as partners, therein.

In situations such as the instant one, a constructive trust will be imposed in order to avoid the unjust enrichment of one party at the other's expense. In that regard, this Court has recently stated that:

> "[a] constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. *Yohe v. Yohe*, 466 Pa. 405, 353 A.2d 417 (1976); *Denny v. Cavalieri*, 297 Pa.Super. 129, 443 A.2d 333 (1982). The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. *Id.* The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment. *Roberson v. Davis*, 397 Pa.Super. 292, 580 A.2d 39 (1990)."

*Hercules v. Jones*, 415 Pa.Super. 449, 457–458, 609 A.2d 837, 841 (1992).

In this case, appellants would be unjustly enriched if permitted to retain 100% of the property upon which the

business is built because the parties mistakenly believed that when appellees conveyed tax parcel 4–5–8 to appellants, the two separately owned land parcels would merge into one large parcel, and all four parties would be listed as the record owners of the business property. We conclude that a constructive trust is necessary in the instant case to prevent the unjust enrichment of appellants. Appellants will hold the subject property, and improvements thereto, in a constructive trust for the benefit of the business until such time as either the partnership is dissolved or the business, and underlying property, are sold.

For all of the foregoing reasons, we vacate the final decree in equity and remand this matter to the trial court for appropriate proceedings consistent with this decision [7]. It is so ordered.

7. Although appellants seek a distribution of one-half of the profits realized by the business since 1964, in addition to an accounting, the respective rights and interests of the parties in the business can only be determined following an accounting and further hearings in the trial court to determine the respective interests of appellants and appellees in the partnership. In addition, if the partnership should be dissolved in the future, appellants' interest in the partnership assets should be determined at that time.