John E. HORNER, an Incapacitated Person, by His Limited Guardian, the PEOPLES NATIONAL BANK OF CENTRAL PENNSYLVANIA, Appellees,

v.

Kenneth E. HORNER, Appellant.

Appeal of Barbara Devinney–Mills.

Superior Court of Pennsylvania.

Argued Sept. 24, 1998.

Filed Nov. 17, 1998.

---

S. Paul Mazza, State College, for appellee.

Rodney A. Beard, State College, for Devinney–Mills, participating party.

Before JOHNSON, HUDOCK and HESTER, JJ.

JOHNSON, Judge:

In this appeal, we address the level of mental capacity required of a living donor to execute a gift of real estate. We conclude that sufficient capacity is shown where the donor demonstrates an intelligent perception and understanding of the dispositions made of property and the persons and objects he desires shall be the recipients of his bounty. Because we find, in this case, that the trial court applied an erroneous measure of capacity, we reverse and remand for further proceedings consistent with this Opinion.

This case arises out of a contest amongst family members over property held by John E. Horner (John) during his declining years. John, now deceased, owned a home and a hunting camp in Potter Township, Centre County. By way of the residuary clause in a 1989 will, John devised both properties to Kenneth E. Horner, his nephew by consanguinity. Thereafter, in 1990, John suffered a medical event similar to stroke from which he did not achieve a complete recovery. Consequently, in May 1990, John entered a nursing home, where during the intervening years until 1993, he executed a series of wills and codicils, at least one of which named intervenor Barbara Devinney–Mills (Mills) as residuary beneficiary. Mills was John's niece by affinity.

In June 1993, Kenneth traveled to Centre County from his home in Arkansas, purportedly in response to John's request that Kenneth assist him in conducting his personal business. On June 9, 1993, John executed a putative power of attorney instructing that Kenneth take over his personal affairs and retain an attorney, if necessary, to recover unspecified property in which John claimed an interest. Thereafter, on June 15, 1993, John executed the two deeds in question, conveying both his home and hunting camp properties to Kenneth, subject to his own retention of a life estate.

Subsequently, on July 12, 1993, John executed a new will in which he purported to devise the hunting camp to Mills and his home to Ida Belle Keller, Mills's mother. Also on July 12, John executed a durable power of attorney in favor of the People's National Bank of Central Pennsylvania (the

bank), revoking all prior powers of attorney and naming the bank his sole agent for the transaction of his personal business. Thereafter, on July 13, Mills filed a guardianship petition in the Centre County Court of Common Pleas, Orphans' Court Division, alleging that John had recently conveyed the subject real estate to Kenneth, and asserting that John no longer possessed "sufficient capacity to make or communicate responsible decisions concerning his assets and finances...." Petition to Adjudge John E. Horner to be Incapacitated, Centre County Orphans' Court No. 14–93–0294, ¶ 15. Following a hearing, the presiding judge, the Honorable David E. Grine, adjudged John "partially incapacitated" pursuant to 20 Pa.C.S. §5501, "to make and communicate decisions regarding his financial matters." Adjudication filed September 1, 1993, Centre County Orphans Court No. 14–93–0294, Conclusions of Law, ¶ 3. However, the court concluded also that John "retains testamentary capacity and the capacity to make decisions regarding his person." *Id.* at ¶ 7. The court did not address the June 13 conveyances or John's capacity on that date.

On August 26, 1993, John, acting in his own right, commenced this civil action in equity, alleging that he had no donative intent to make the conveyances, and that Kenneth had fraudulently induced and unduly influenced him to convey his homestead and hunting camp properties. Following hearing, Judge Grine decreed the subject deeds null and void. The court failed, however, to render an adjudication in accordance with Pa. R.C.P. 1517, and summarily denied Kenneth's motion for post-trial relief. Kenneth filed this appeal.

In his Statement of Questions Involved, Kenneth has preserved three issues for our review: (1) whether the court committed an abuse of discretion in finding that a confidential relationship existed between John and Kenneth; (2) whether the court erred in concluding that execution of the deeds in question required more than testamentary capacity; and (3) whether the court committed an abuse of discretion in failing to conclude that Mills and the bank had unclean hands.

■ This Court has recognized that:

'[Our] scope of appellate review of a decree in equity is particularly limited, and ... the findings of the Chancellor will not be reversed unless it appears that the Chancellor clearly committed an abuse of discretion or an error of law. Where credibility of witnesses is important to a determination, the findings of the Chancellor are entitled to particular weight because the Chancellor has the opportunity to observe their demeanor.'

*DeMarchis v. D'Amico*, 432 Pa.Super. 152, 637 A.2d 1029, 1033 (1994), quoting *Dudash v. Dudash*, 313 Pa.Super. 547, 460 A.2d 323, 326 (1983). We are constrained to defer to the chancellor's findings of fact "unless there has been an abuse of discretion, a capricious disregard of evidence, [or] a lack of evidentiary support on the record...." *Pennsylvania Power & Light Company v. Maritime Management, Inc.*, 693 A.2d 592, 593 (Pa.Super.1997). Where a lack of evidentiary support is apparent, "reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law." *Union Trust Company of New Castle v. Cwynar*, 388 Pa. 644, 649, 131 A.2d 133, 135 (1957).

■ Moreover, we are not bound by the chancellor's conclusions of law, *DeMarchis, supra*, 637 A.2d at 1033, and where the rules of law on which the chancellor relied are "palpably wrong or clearly inapplicable," we will reverse the chancellor's decree, *Snyder Brothers, Inc. v. Peoples Natural Gas Company*, 450 Pa.Super. 371, 676 A.2d 1226, 1229 (1996).

To facilitate appellate review, we will first address Kenneth's contention that the chancellor committed legal error in applying an incorrect measure of capacity to John's conveyances of the homestead and hunting camp properties. Because this question is dispositive of the appeal before us, we need not address the merits of Kenneth's remaining assertions.

In its opinion, the court stated that "[t]he mental capacity required to convey real es-

tate is greater than testamentary capacity." Trial Court Opinion, filed January 11, 1996, at 11, citing *Karber v. Goldstrohm*, 305 Pa. 470, 474, 157 A. 912, 913 (1932). The court concluded that John did not possess such capacity, based in part on the court's September 1 adjudication in the guardianship action, and in part on its observation of John's condition on June 15, 1993, purportedly documented in a videotape submitted by Kenneth. *Id.* at 11–12. We reverse the resulting decree because we find the measure of capacity applied by the court unsubstantiated and inapplicable.

To define the requisite level of capacity, the chancellor relied on our Supreme Court's decision in *Karber v. Goldstrohm, supra.* In *Karber*, the court addressed a donor's assertion that he had been unduly influenced to convey real property to his daughter. Though aged and infirm, the donor did not assert incapacity, and the court did not dispose of the case on that basis. In an ancillary discussion the court stated that "it requires less mentality for a person to know and understand what he is doing when making a will than it does when transacting ordinary business." Without further discussion, the court extrapolated: "The same rule applies of course to the conveyance of a property." *Karber, supra*, at 474, 157 A. at 913. The chancellor concluded that *Karber* enunciates a standard for capacity specific to real estate transfers, requiring a level of mental acuity in excess of testamentary capacity. We find the court's language in *Karber* susceptible to competing interpretations and therefore, ambiguous. Moreover, the court's language was not essential to the disposition of the case. Accordingly, we are compelled to conclude that *Karber* is not controlling, and we find the chancellor's reliance upon it misplaced. *See In re Estate of Cassell*, 334 Pa. 381, 6 A.2d 60 (1939) (determining that where comments made by Supreme Court were not necessary to decision, they were not binding authority for disposition of subsequent case by Superior Court).

■ Though the trial court did not enumerate findings of fact, the narrative discussion of the chancellor's Rule 1925 opinion proceeded on the premise that the convey-

ances in question were gifts. Trial Court Opinion, *supra*, at 3–4. Following a careful review of the record, including the June 15, 1993 videotape, we find substantial evidence in support of such a finding. We conclude accordingly, that the proper measure of John Horner's capacity on the date of the conveyances was not whether he had the mental acuity "to convey real estate," but whether he had capacity to make an *inter vivos* gift.

Our Supreme Court has defined the requisite capacity to make a gift as "an intelligent perception and understanding of the dispositions made of property and the persons and objects one desires shall be the recipients of one's bounty." *In re Null's Estate*, 302 Pa. 64, 66–67, 153 A. 137, 139 (1931). Moreover, the court has cautioned that *incapacity* to make a gift is not readily established. "Old age, sickness, distress or debility of body do not prove ... incapacity, nor do inability to transact business, physical weakness, ... or failure of memory." *Id.* at 67, 153 A. at 139 (internal citations omitted). *See also Jones v. Schaefer*, 357 Pa. 628, 637, 55 A.2d 387, 391 (1947) (concluding that eighty-two year old donor's debilitated physical condition, suffering from kidney disturbance, glandular enlargement and generalized arteriosclerosis did not "so reduce his mental capacity ... as to justify a court's deciding that his acts [in making gift of real estate] can be given no legal effect"). Our consideration of Pennsylvania jurisprudence reveals that similar measures apply to a determination of testamentary capacity. *See In re Kuzma's Estate*, 487 Pa. 91, 408 A.2d 1369 (1979) (concluding that testator possesses adequate capacity "if he knows those who are the natural objects of his bounty, of what his estate consists, and what he desires done with it even though his memory may have been impaired by age or disease"). *See also In re Ziel's Estate*, 467 Pa. 531, 359 A.2d 728 (1976) (concluding that greater degree of proof of mental incapacity is required to set aside will on ground of lack of testamentary capacity than is necessary to show inability to conduct one's business affairs).

Nonetheless, the Supreme Court has distinguished the standards, reasoning that "generally speaking, it requires more busi-

ness judgment to make a gift than to make a will, as the former is immediately active while the latter is prospective...." *Null's Estate, supra,* at 66–67, 153 A. at 139. *See also McCown v. Fraser,* 388 Pa. 644, 131 A.2d 133 (1957) (reasoning that because a testator's interest in his property necessarily terminates at death, his bequest is viewed less suspiciously than gift of *inter vivos* donor, who divests himself of the present ability to enjoy his property). However, in the context of this case, we find this reasoning inapposite. Our review of the record shows that, concurrent with his conveyance, John Horner reserved a life estate in both properties. Because Horner did not divest himself of the ability to use his properties, the practical effect of his conveyance was prospective.

Accordingly, we find ·that the chancellor erred as a matter of law in concluding that "[t]he mental capacity required to convey real estate is greater than testamentary capacity." Trial Court Opinion, *supra,* at 11.

Moreover, we find that this error misdirected the court's inquiry on the issue of John Horner's mental acuity as an element of confidential relationship. Our Supreme Court has stated that "a confidential relationship exists when the circumstances make it certain that the parties do not deal on equal terms; where on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed." *Weir by Gasper v. Estate of Ciao,* 521 Pa. 491, 504, 556 A.2d 819, 825 (1989). The chancellor concluded that John had demonstrated a confidential relationship as a product of his mental weakness on the day in question. Trial Court Opinion, *supra,* at 7. However, the court characterized its finding, again, with apparent reference to the level of acuity required to convey real estate. The court stated: "We find John Horner at the time in question was prone to be influenced by other people and was incapable of understanding the nature and effect of his actions in the conveyance." Trial Court Opinion, *supra,* at 7–9. Because we find this reference suggestive that the court applied the same inappropriate standard as it applied to capacity, we are unable to verify that its finding of a confidential relationship between John and Kenneth is properly supported in the record. Thus, we are constrained to reverse the chancellor's decree and remand for further proceedings to determine if, on June 15, 1993, John Horner possessed "an intelligent perception and understanding of the dispositions made of property and the persons and objects one desires shall be the recipients of one's bounty." *In re Null's Estate, supra,* at 66–67, 153 A. at 139. If the court determines accordingly that Horner did possess capacity on the foregoing date, it shall reconsider the issue of confidential relationship in view of the appropriate legal standards and shall commit the resulting findings of fact and conclusions of law to a written adjudication in accordance with Pa.R.C.P. 1517.

Final Decree **REVERSED.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**