J-A11039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHELLE SANDS, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SCOTT C. SANDS, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DANIEL K. STOUDT AND CYNTHIA G. STOUDT | No. 1218 EDA 2015 |

Appeal from the Judgment Entered June 17, 2015
in the Court of Common Pleas of Chester County Civil Division
at No(s): 2011-08478

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 13, 2016**

Appellant, Michelle Sands, individually and as executrix of the Estate of

Scott C. Sands ("Decedent"), appeals from the judgment entered in the

Chester County Court of Common Pleas following the denial of Appellant's

post-trial motions.  Appellant contends that the trial court erred by declining

to impose a constructive trust on two specific parcels of real property, by

refusing to admit relevant evidence, and by failing to award Appellant

monetary damages.  We affirm.

The facts underlying this case are well-known to the parties.  For

purposes of this appeal, we note the following pertinent background.  In

---

[*] Former Justice specially assigned to the Superior Court.

2001, Decedent and Appellee, Daniel K. Stoudt ("D. Stoudt"), became equal business partners in an incorporated business, QuarryCut, Inc., which supplied sawn veneer building stone for various uses. Trial Ct. Op., 9/25/15, at 2. Prior to becoming partners with D. Stoudt, Decedent was an equal partner with Daniel Brackbill in a similar business, Run Gap Building Stone ("Run Gap"). N.T., 7/3/14, at 706. Run Gap used stone from a parcel of land ("the Quarry") owned by Brackbill. *Id.* Brackbill also owned three parcels of land contiguous to the Quarry ("the Buffer Lots"). In 2001, Brackbill decided to sell his interests in Run Gap, the Quarry, and the Buffer Lots to D. Stoudt. *Id.* at 745-46. D. Stoudt and Decedent formed a new corporation named Spring Hollow Building and Landscape Stone, Inc., and ultimately changed the name to the current QuarryCut. *Id.*

D. Stoudt acquired the Quarry in a Section 1031 like-kind exchange under the U.S. Internal Revenue Code, and his name is the sole name on the deed. Trial Ct. Op. at 5. Conversely, the Buffer Lots were purchased in the names of both D. Stoudt and Decedent. *Id.* at 5. Appellees, D. Stoudt and Cynthia Stoudt ("Appellees") provided the funds for the purchase and personally paid the mortgage on the Quarry for five years, after which time QuarryCut made the payments. N.T., 7/3/14, at 745-48. Appellees never paid the mortgage on the Buffer Lots.

Likewise, in 2003, Appellees agreed to buy a parcel of property, 77 Wells Road, Parker Ford, Pa. ("Wells Road") for QuarryCut's use. *Id.* at 759-

- 2 -

60. Appellees also acquired Wells Road in a Section 1031 tax exchange and for the first year paid the mortgage, after which QuarryCut assumed the payments. *Id.* at 760-63.

Initially, Decedent was primarily responsible for the day to day operations of QuarryCut, while Appellant was employed as the bookkeeper for the company. N.T., 6/30/14 at 21. After Decedent died suddenly in 2010, D. Stoudt discharged Appellant from her bookkeeping duties. *Id.* at 22. On July 29, 2011, Appellant filed a complaint seeking equitable relief and monetary damages and a motion for a preliminary injunction against Appellees.

Although the parties entered into an agreement regarding operation of QuarryCut on September 22, 2011, Appellant filed a petition for appointment of a custodian on September 24, 2012. On July 1, 2013, the trial court granted Appellant's petition and on July 16, 2013, appointed William J. Brennan, Esq., as custodian. Appellant filed a second amended complaint and Appellees filed a counterclaim. Appellees also engaged counsel to file a separate suit on behalf of QuarryCut against Appellant ("QuarryCut's suit"). The trial court denied Appellant's motion to consolidate the two cases via an order dated September 19, 2012, and we note that QuarryCut's suit is not here at issue.

A trial was conducted regarding Appellant's second amended complaint and Appellees' counterclaims between June 30, 2014, and July 11,

2014. At trial, one of Appellant's main contentions was that the Quarry and Wells Road were meant to be the property of QuarryCut or owned equally between Decedent and D. Stoudt. Appellant testified that she was privy to conversations between D. Stoudt and Decedent in which both parties expressed the intention for joint ownership of the disputed properties even though only Appellees' names would appear on the deed. N.T., 6/30/14, at 170-73;187-88. To that end, Appellant presented evidence that QuarryCut's website represented that QuarryCut "owns or has exclusive rights to our quarries." *Id.* at 108. Further, Appellant emphasized that D. Stoudt listed the Quarry as owned fifty-fifty between himself and Decedent on loan applications. *Id.* at 110-13. Regarding Wells Road, Appellant highlighted that Appellees withdrew equity from the property during refinancing in 2008, even though QuarryCut was making the mortgage payments at that time. N.T., 7/11/14, at 135. The trial court declined to admit evidence of two magazine advertisements that purported to represent that the Quarry and Wells Road were joint property or QuarryCut's property.

Conversely, D. Stoudt testified that he and Decedent never intended for the Quarry or Wells Road to be their joint property or QuarryCut's property. N.T., 7/3/14, at 757-63. Instead, D. Stoudt provided evidence of numerous documents listing himself as the sole owner of the Quarry including the deed, his checking account records, and the HUD-1 for the Quarry. D. Stoudt stated that QuarryCut's payment of the mortgage on both

the Quarry and Wells Road represented "rent" and that Decedent never provided any out-of-pocket funds toward either property, while Appellees paid the down payments and the mortgages on both properties until QuarryCut could take over its "rent" responsibilities. N.T., 7/3/14, at 747-65. Appellees also pointed out that Decedent's 2007 personal financial statement does not list either the Quarry or Wells Road and that Appellant's petition for the grant of letters testamentary for Decedent's estate ("Estate") does not list either property as property of the Estate. N.T., 7/1/14, at 239-44.

At trial, Appellant also claimed that D. Stoudt breached his fiduciary duty to her as executrix of the Estate and a 50% shareholder of QuarryCut, by (1) excluding her from shareholder meetings and (2) using QuarryCut funds to pay for legal counsel adverse to her interests. N.T., 6/30/14, at 27-31. Appellant also generally claimed that D. Stoudt misappropriated QuarryCut funds for his own personal use. *Id.* at 39-78. Likewise, Appellees claimed that Appellant and Decedent misappropriated large amounts of QuarryCut funds as "loans" for their own personal use. N.T., 7/1/14, at 335-41.

The trial court entered a decision on November 25, 2014, and an amended decision on December 9, 2014, wherein the court found in favor of Appellant by ruling that William Brennan, Esq., was to remain as a custodian of QuarryCut and also by enjoining D. Stoudt from not recognizing Appellant

in her capacity as executrix of the Estate, a 50% shareholder of QuarryCut. As to all other claims, the trial court found in favor of Appellees. Appellees' cross-claims were denied.

Appellant filed a timely post-trial motion, which the trial court denied in an order dated March 26, 2015. The instant timely appeal followed[1] and Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive Pa.R.A.P. 1925(a) opinion dated September 25, 2015.[2] Appellant sets forth the following issues for review:

> 1. Whether the trial judge erred when he applied an incorrect legal standard in denying claims for constructive ownership of two real estate properties since the trial court imposed an overly restrictive standard by requiring an express agreement to convey title to a particular person/individual whereas the doctrine of constructive ownership does not require such an express agreement?
>
> 2. Whether the trial judge erred when he ruled inadmissible Plaintiff Exhibits 156 and 157 (two magazine articles relevant to ownership of the two properties in question), since Daniel Stoudt admitted he received and reviewed them, and admitted he did not object to statements made therein about ownership of the two properties, and said statements supported constructive ownership of the properties in favor of either the Estate or QuarryCut?

---

[1] The specific judgment at issue was ultimately entered on June 17, 2015, following a praecipe for entry of judgment filed by Appellant.

[2] In its Rule 1925(a) opinion, the trial court specifically noted that a motion for compulsory nonsuit had been granted against Appellant in her individual capacity because "at most [Appellant] was an employee of QuarryCut" and thus not entitled to individual relief. Trial Ct. Op. at 2-3. However, Appellant's claims in her capacity as the executrix of the Estate survived. *Id.* at 3.

3. When the overwhelming evidence, and Daniel Stoudt's admissions, demonstrated Daniel Stoudt's abuse of the corporation (QuarryCut) and actions adverse to the other fifty percent shareholder (the Estate of Scott Sands), whether the trial judge erred by failing to: award Michelle Sands compensatory and punitive damages for Daniel Stoudt's breach of fiduciary duty; remove Daniel Stoudt from any control over QuarryCut; and reinstate Michelle Sands' employment with QuarryCut?

4. Whether the trial judge erred when he failed to award Michelle Sands damages for Daniel Stoudt's improper direction to QuarryCut corporate attorneys and corporate accountant to work solely in favor of Daniel Stoudt and against Michelle Sands' interests, and when the trial judge directed Daniel Stoudt's personal counsel to represent QuarryCut in its action against Michelle Sands and to be paid by QuarryCut?

Appellant's Brief at 2-3.

In her first issue, Appellant argues that the trial court erred by declining to find that the Quarry and the Wells Road properties should be deemed the property of either D. Stoudt and Decedent jointly or the property of QuarryCut. Specifically, Appellant contends that these properties should be subject to a constructive trust because equity demands that the Estate should share in the ownership of these properties. The crux of Appellant's argument lies in her contention that the evidence presented was sufficient to show that the parties intended to share in ownership of these properties and that the properties were placed in Appellees' names alone only for tax purposes. Appellant avers that the trial court did not apply the correct legal standard when considering the constructive trust doctrine by

failing to consider the inequity that would result by allowing Appellees to maintain sole ownership of the Quarry and Wells Road. We decline to agree.

As a preliminary matter, we note that a constructive trust is an equitable remedy. *Stauffer v. Stauffer*, 351 A.2d 236, 241 (Pa. 1976). Our standard of review regarding an equity proceeding is beyond cavil:

> Our review of this case is guided by the principles that the scope of appellate review of a decree in equity is particularly limited, and that the findings of the [trial court] will not be reversed unless it appears that the [court] clearly committed an abuse of discretion or an error of law. Where credibility of witnesses is important to a determination, the findings of the [trial court] are entitled to particular weight because the [court] has the opportunity to observe their demeanor . . . .

*DiMaio v. Musso*, 762 A.2d 363, 365 (Pa. Super. 2000).

Further, "our standard of review makes clear that with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014) (citation and internal quotation marks omitted). In addition, we note the following legal precepts regarding constructive trusts:

> [A] constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

*DeMarchis v. D'Amico*, 637 A.2d 1029, 1036 (Pa. Super. 1994) (citation omitted).

In this case, the trial court specifically found that Appellant's testimony was not credible regarding the intended ownership of the Quarry and Wells Road. Most significantly, the court determined that the credible evidence presented was not sufficient to establish that the parties intended that the properties in question would ultimately be owned jointly by Decedent and Appellees, either individually or through QuarryCut. We conclude that the trial court was well within its purview when finding that Appellant's testimony regarding the intended joint ownership of the property was not credible and we see no reason to disturb this determination. *See DiMaio*, 762 A.2d at 365.

Appellant relies on *DeMarchis* for the proposition that equity requires that the Quarry and Wells Road be held in a constructive trust for the benefit of the Estate or QuarryCut. In *DeMarchis*, this Court held that a constructive trust was to be applied to certain parcels of real property for the benefit of all parties to a partnership. *DeMarchis*, 637 A.2d at 1036. However, *DeMarchis* is instantly distinguishable. In this case, the trial court's finding that the properties at issue were not intended to be jointly owned stands in stark contrast to the factual findings in *DeMarchis*, where the parties were deemed to have intended that the real property at issue be considered business assets from the time of their initial acquisition. *See id.*

at 1036. Appellant points out that in *DeMarchis*, our Court determined that inequity would result where properties were held in the names of only some of the participants in a partnership, when the attendant business had made the mortgage payments on the properties at issue. *See id.* at 1035-36. However, in the instant case, Appellees provided the initial purchase money for the properties at issue, made the initial mortgage payments, and considered the mortgage payments made by QuarryCut thereafter to be rent payments. Accordingly, because we conclude that both the Quarry and Wells Road are not subject to a constructive trust for the benefit of the Estate or QuarryCut, we hold that the trial court did not abuse its discretion by declining to impose this equitable remedy. *See DiMaio*, 762 A.2d at 365; *DeMarchis*, 637 A.2d at 1036. Therefore, Appellant's first issue lacks merit.

In her second thinly developed issue on appeal, Appellant argues that the trial court erred by declining to admit evidence of two magazine advertisements that she alleges were relevant to show that D. Stoudt and Decedent intended for the properties at issue to be owned by QuarryCut. The trial court declined to admit these advertisements, finding that the proposed exhibits constituted impermissible hearsay and had no evidentiary value. Trial Ct. Op. at 5-6. No relief is due.

As a prefatory matter, we note:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on

admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 496 (Pa. Super. 2011) (citations and internal quotation marks omitted).

Most significantly, Pennsylvania Rule of Evidence 402 provides that generally, "[a]ll relevant evidence is admissible" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is that which has "any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401(a), (b). The Comment to Rule 401 indicates that "[w]hether evidence has a tendency to make a given fact more or less probable is to be determined by the court in light of the reason, experience, scientific principles and the other testimony offered in the case." Pa.R.E. 401 cmt.

In this case, the trial court properly determined that the evidence in question had no evidentiary value and was therefore inadmissible.[3] Trial Ct. Op. at 5-6. *See* Pa.R.E. 401(a), (b); Pa.R.E. 402. As noted by the trial

---

[3] We note that because we deem the disputed advertisements as properly excluded for lack of evidentiary value pursuant to Pa.R.E. 401(a), (b) and Pa.R.E. 402, we need not address Appellant's contention that such evidence was admissible pursuant to a hearsay exception.

court, the magazine articles constituted paid advertisements and as such one "would not expect a business owner to explain exact ownership details to a public audience." Trial Ct. Op. at 6. Accordingly, we conclude that the trial court's decision to exclude evidence of the advertisements at issue due to their lack of evidentiary value was not manifestly unreasonable pursuant to the Pennsylvania Rules of Evidence and did not therefore constitute an abuse of discretion. ***Commonwealth Fin. Sys., Inc. v. Smith***, 15 A.3d at 496. Appellant's second issue merits no relief.

In her brief, Appellant presents a combined argument section in support of her final two issues. The essence of her arguments center around the contention that D. Stoudt committed malfeasance while conducting QuarryCut business after Decedent's death and that the trial court failed to issue monetary damages to Appellant in relief thereof. Specifically, Appellant avers that D. Stoudt improperly "froze" her out of corporate meetings and decisions, improperly terminated her employment, and misappropriated corporate funds by, *inter alia*, using such funds to employ legal counsel against Appellant's interests.

Appellants final two issues concern questions of fact. However, the trial court specifically found Appellant's averments to be lacking in credible evidentiary support. ***See*** Trial Ct. Op. at 6. As the trier of fact, the trial court was well within its purview to determine that the evidence presented by Appellant was not credible. ***See D.K.***, 102 A.3d at 478. Therefore, we

decline to conclude that the trial court's denial of Appellant's claims constituted an abuse of discretion. ***See id.*** Accordingly, Appellant's final two issues also must fail and we affirm the judgment below.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016