**Hoffman v. Prutzman**

*Douglas M. Marinos,* for plaintiffs.
*Joel B. Wiener,* for defendants.

FORD, *J.,* April 15, 2010—This suit stems from a dispute among business associates. In 1981, the plaintiff, Donna Hoffman, and the defendants, Roxanne Prutzman and Donna Grimshaw, opened a hair salon known as The Hair Connection. (Unless otherwise indicated in this opinion, "plaintiff" refers to Donna Hoffman and "defendants" refer to Roxanne Prutzman and Donna Grimshaw.) The three women operated The Hair Connection until 2007, when the plaintiff informed the defendants that she intended to retire from the business. From that point forward, the defendants actively excluded the plaintiff from the management of The Hair Connection and refused to pay the plaintiff a sum equal to the value of her interest in the business after she retired. Defendants, without plaintiff's input, then operated the salon as a limited liability company named The Hair Connection LLC.

Plaintiff contends that The Hair Connection constituted a partnership at the time of her retirement and that the defendants wrongfully excluded her from the partnership. To enforce her rights as a partner, plaintiff brought this suit on behalf of herself and on behalf of the partnership, The Hair Connection. In her amended complaint, plaintiff named her two former business associates as defendants, as well as the limited liability company the two individual defendants formed, The Hair Connection LLC. In their answer to the amended complaint, defendants state that The Hair Connection operated as a joint venture and that defendants had no obligation to account

to the plaintiff when she retired from the business. Defendants' answer includes new matter and defendants stated a counterclaim.

After a bench trial conducted on January 5 and January 6, 2010, I conclude that The Hair Connection operated as a partnership at the time of plaintiff's retirement. Additionally, the defendants wrongfully excluded the plaintiff from the partnership. In so doing, defendants breached the fiduciary duty they owed to the plaintiff, their former partner. For the reasons that follow, the plaintiff is entitled to compensatory and punitive damages and the defendants' counterclaim is denied and dismissed.

## FINDINGS OF FACT

On April 20, 1981, the plaintiff, Donna Hoffman, and the defendants, Roxanne Prutzman and Donna Grimshaw, entered a written "joint venture agreement" to operate a beauty salon under the name of The Hair Connection. (The agreement is plaintiff's exhibit no. 1.) The agreement stated that the joint venture would be in effect for a 10-year period unless otherwise terminated. Therefore, the agreement would govern until April 20, 1991. Pursuant to paragraph 18 of the agreement, the parties reserved the right to enter a supplemental agreement to extend the life of the agreement. Such a supplemental agreement had to be executed no later than six months prior to the termination of the agreement.

According to the terms of the agreement, the plaintiff and defendants agreed that each would pay for and pro-

vide their own equipment and retain "all such income as she may produce." Moreover, each woman retained the right to hire an apprentice. The hiring party would be solely responsible for the payment of her apprentice. Each woman agreed to maintain her own book of business. However, each woman agreed to contribute to a capital account to pay for the expense and upkeep of the joint venture. The agreement further stated that each woman had an equal voice in the management of the business.

In 1985, the plaintiff and defendants purchased the assets of an Allentown hair salon owned by Ralph Campetti. Under the purchase, the three women acquired Mr. Campetti's book of business and sublet under his lease at Fifteenth and Allen Streets in Allentown. Additionally, the plaintiff and defendants employed a manicurist and two hair stylists and sold hair products to the public for the first time.

After the acquisition of the Campetti hair salon, the organization of The Hair Connection changed in some respects. As envisioned in the agreement, each woman still retained all of the proceeds of hair styling she actually performed. The three women began to equally share the profits generated by the sale of hair products and the services of the manicurist. Further, the three women evenly split the house portion of funds generated by the employee hair stylists. The house portion equaled 50 percent of the employee stylists' proceeds. The cost of operating The Hair Connection was spread evenly among the three women.

The plaintiff and defendants did not sign a supplemental agreement to extend the life of the agreement prior

to its expiration on April 20, 1991. Therefore, the joint venture formed by the plaintiff and defendants in 1981 ended at its 10-year anniversary.

After the expiration of the agreement in the spring of 1991, the plaintiff and defendants continued to operate The Hair Connection. The organization of the business remained fundamentally the same from 1985 onward, that is, each woman retained all of the proceeds generated by her own work, while all profits generated from manicures, product sales and employee hair stylists were divided evenly among the three women.

On November 20, 2001, the plaintiff and defendants entered a commercial lease agreement with Fieldstone Associates L.P., to rent the premises owned by Fieldstone at 6750 Iroquois Trail, Suite 4, Allentown, Pennsylvania, 18104. (Plaintiff's exhibit no. 2.) The three women relocated The Hair Connection to the newly rented premises. The initial term of the lease was five years with an additional three renewal terms of five years each.

At the time they entered this lease, the plaintiff and defendants borrowed approximately $65,000 from Citizens National Bank of Slatington. (Plaintiff's exhibit no. 5.) On December 18, 2001, the three women borrowed an additional $10,000 from Citizens National Bank of Slatington. They used the loan proceeds to purchase trade fixtures for their new business location and for physical improvements to the leased space.

On November 29, 2004, the plaintiff and defendants entered a business loan agreement with Harleysville National Bank in the amount of $53,170.38 to refinance

the balance on the $65,000 loan from Citizens National Bank of Slatington. (Plaintiff's exhibit no. 6.) They refinanced on the recommendation of Erwin Prutzman, the husband of defendant Roxanne Prutzman who acted as the bookkeeper for The Hair Connection.

In 2006, the plaintiff discussed with the defendants her intention to retire from The Hair Connection at some point in 2007. The plaintiff wanted her retirement to coincide with the end of the initial term of the commercial lease of the premises at Iroquois Trail. The lease was set to expire on April 14, 2007.

On January 22, 2007, the plaintiff hand-delivered to the defendants a letter which stated her desire to retire from The Hair Connection. In the letter, the plaintiff recommended that the accountant for The Hair Connection begin the process of her withdrawal from the business. (Plaintiff's exhibit no. 7.)

The plaintiff and defendants met with the accountant for The Hair Connection, Louis Gentilotti CPA, CFP, on the same day plaintiff gave the letter announcing her retirement. At the meeting, the parties discussed options whereby the defendants could buy-out the plaintiff's interest in The Hair Connection. Mr. Gentilotti presented the women with three methods of valuing the plaintiff's interest in the hair salon. The defendant, Roxanne Prutzman, expressed frustration at the prospect of a buy-out. She insisted that the parties were still bound by the agreement entered in 1981 and that, under the agreement, there was no justification for a buy-out of the plaintiff's interest in The Hair Connection. According to

Ms. Prutzman, Ms. Hoffman should walk away from the business with no compensation for her interest. With this, Mr. Gentilotti told the women that he believed they should seek the advice of legal counsel.

On February 12, 2007, the defendants hand-delivered to the plaintiff a copy of a letter prepared by Joel Wiener Esquire, who is defense counsel in this suit. In the letter, Attorney Wiener stated that The Hair Connection was a partnership and that the plaintiff and defendants were jointly and severally liable for the debts of the partnership. (Plaintiff's exhibit no. 9.)

On February 16, 2007, the defendants formed a limited liability company with the name "The Hair Connection LLC." (Plaintiff's exhibit no. 16.) The defendants formed this business entity with no advance notice to or consent from plaintiff.

In April of 2007, the plaintiff attempted to obtain The Hair Connection's checkbook to draft a check in payment of her quarterly taxes, which was the practice for years among the partners. However, the defendant, Roxanne Prutzman, refused to deliver to the plaintiff The Hair Connection's checkbook. The formation of the limited liability company, The Hair Connection LLC had still not been revealed to plaintiff.

On April 30, 2007, Attorney Wiener sent Douglas Marinos Esquire, plaintiff's attorney in this suit, a letter in which he claimed that the plaintiff had been previously advised that "the time for exercise of the option for renewal of The Hair Connection partnership expires today." Attorney Wiener added that, if the plaintiff wished

to "continue the partnership and the use of the space for the partnership," she needed to sign the lease extension that same day. (Plaintiff's exhibit no. 11.) Attorney Wiener made no reference to the limited liability company his clients had recently formed.

Contrary to the assertions contained in defense counsel's letter of April 30, 2007, the defendants never advised the plaintiff on the subject of renewing the commercial lease with Fieldstone until the letter from Attorney Wiener on April 30, 2007. The defendants never delivered the lease renewal to the plaintiff for signing nor sought her input as a partner.

In early June of 2007, the defendants held a meeting with the hair stylists employed at The Hair Connection. The defendants never notified the plaintiff of this meeting and took steps to ensure that plaintiff did not know of the meeting beforehand. At the meeting, the defendants informed the employees of the business dispute that existed between themselves and the plaintiff.

On June 1, 2007, the defendants opened a checking account in the name of "The Hair Connection LLC." To fund this account, the defendants removed $6,700 from the operating account of the partnership with the plaintiff, The Hair Connection. The defendants later removed an additional $18,500 from the same operating account of the partnership. The defendants did not notify or obtain the consent of their partner, the plaintiff, prior to emptying The Hair Connection's operating account. Subsequently, defendants used the funds removed from the

partnership account to capitalize their newly-formed limited liability company, The Hair Connection LLC.

On June 12, 2007, plaintiff's counsel, Attorney Marinos, sent a letter to defense counsel, Attorney Wiener, in which he explained that the plaintiff intended to retire from The Hair Connection effective June 19, 2007. (Plaintiff's exhibit no. 13.)

Upon the plaintiff's retirement on June 19, 2007, the defendants took no action to wind down the affairs of The Hair Connection, settle the capital accounts among themselves and the plaintiff or apply the assets of The Hair Connection to satisfy the liabilities of the partnership.

At the time of plaintiff's retirement, The Hair Connection's assets in bank accounts, petty cash, security deposits, general supplies and beauty supplies amounted to $24,631. Plaintiff's one-third share of this figure amounted to $8,210. Additionally, The Hair Connection maintained ownership of its furniture and trade fixtures. The depreciated value of these items equaled $6,340.58. Plaintiff's one-third share of this amount was $2,113.53. Therefore, the total value of the plaintiff's interest in the tangible assets and trade fixtures of The Hair Connection at the time of her retirement was $10,323.53.

At the time of her retirement, the good will that the plaintiff brought to The Hair Connection had a value of $4,000.

The liabilities of The Hair Connection at the time of plaintiff's retirement equaled $40,456. (Plaintiff's exhibit no. 25.) Plaintiff's one-third responsibility for this amounted to $13,485.

The value of plaintiff's interest in the partnership's tangible assets and good will at the time of her retirement was $12,628.90.

On July 16, 2007, the defendants, through their newly formed limited liability company, The Hair Connection LLC, renewed the lease agreement with Fieldstone for the commercial premises located on Iroquois Trail in Allentown. The plaintiff was never notified of the renewal of the lease nor did she sign the document.

On May 30, 2008, after she learned of the various actions taken by defendants without her knowledge, plaintiff demanded an inspection of the books and records of The Hair Connection and The Hair Connection LLC, to determine the value of her interest in the partnership and to ascertain whether the partnership was being properly managed. The defendants declined the plaintiff's request.

The defendants have possession of and continue to use the name, employees, inventory, equipment, furniture, tools and other tangible assets of the partnership known as The Hair Connection to operate The Hair Connection LLC as a beauty salon.

The defendants intentionally excluded their partner, the plaintiff, from the partnership known as The Hair Connection and have intentionally continued what is, in essence, the business of the partnership through The Hair Connection LLC, without the consent of and without an accounting to the plaintiff.

The defendants knew that their actions in excluding the plaintiff from the management of The Hair

Connection violated their duty of fair-dealing with their partner, the plaintiff. They undertook a course that was financially self-serving to the exclusion and detriment of their partner, the plaintiff.

## DISCUSSION AND CONCLUSIONS OF LAW

The plaintiff contends that The Hair Connection was a partnership at the time of her retirement and that the defendants wrongfully excluded her from this partnership. In her second amended complaint, she demands damages equal to the value of her interest in The Hair Connection at the time she retired. (Count I of plaintiff's second amended complaint.) Plaintiff also seeks compensation based on the defendants' alleged conversion of the partnership property of The Hair Connection. (Count VI of plaintiff's second amended complaint.) Finally, the plaintiff requests punitive damages based on the defendants' alleged breach of the fiduciary duty they owed plaintiff. (Count II of plaintiff's second amended complaint.) Plaintiff's second amended complaint contained in several counts other than those stated above. At trial, plaintiff's attorney advised the court that he was not pursuing these other counts.

The defendants argue that The Hair Connection remained a joint venture since its creation. The defendants therefore argue that the defendants had no obligation to account to the plaintiff when she retired from the business. Defendants allege in their counterclaim that plaintiff remains a co-debtor for the debts of The Hair Connection and that she has failed to make any payments on these debts since retiring from the business. The defen-

dants seek damages equal to plaintiff's share of The Hair Connection's liabilities.

## Partnership

The Uniform Partnership Act, 15 Pa.C.S. §§8301-8365, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." 15 Pa.C.S. §8311(a). A partnership agreement need not be in writing. *DeMarchis v. D'Amico,* 432 Pa. Super. 152, 161, 637 A.2d 1029, 1033 (1994). For a partnership to exist, "there must be clear, mutual assent on the part of two or more persons to form a partnership." *Leprino Foods Co. v. Gress Poultry Inc.,* 379 F. Supp.2d 650, 655 (M.D. Pa. 2005) (applying Pennsylvania law). A partnership can be found to exist from all of the attending circumstances. *Id.* In determining whether a partnership exists, "[t]he receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business . . . ." 15 Pa.C.S. §8312(4).

Conversely, the Pennsylvania Supreme Court defines a joint venture as a "special combination of two or more persons, where, in some specific venture, a profit is jointly sought without any actual partnership or corporate designation." *McRoberts v. Phelps,* 391 Pa. 591, 598, 138 A.2d 439, 443 (1958). A joint venture "must arise from a contractual basis, although the contract need not be express but may be implied from the acts and conduct of the parties." *Id.* at 598-99, 138 A.2d at 443. Typically, a joint venture is formed to effectuate "a single business transaction rather than a general or continuous transac-

tion." *Id.* at 599, 138 A.2d at 444. A joint venture is not a partnership, but an association of parties engaged "in a single business enterprise for profit." *Id.* at 600, 138 A.2d at 444.

The agreement entered by the plaintiff and defendants on April 20, 1981, indicated that the three women were forming a joint venture. However, the terms of the agreement demonstrate that the three women intended the joint venture to govern their business relation for a period of 10 years until April 20, 1991. The agreement further specified that, if the plaintiff and defendants wished to extend the joint venture, a supplemental agreement would have to be executed. The plaintiff and defendants did not enter a supplemental agreement to extend the life of the agreement prior to its expiration on April 20, 1991. Therefore, the joint venture formed by the plaintiff and defendants in 1981 ended in 1991.

After the agreement establishing the joint venture expired in 1991, The Hair Connection continued as a business with all of the attributes of a partnership. The business maintained its own checking and savings accounts, used one federal identification number on its tax returns, filed payroll tax returns using The Hair Connection trade name, reported wages and taxes withheld from employees under The Hair Connection trade name, and paid taxes to various tax authorities from one bank account. (Plaintiff's exhibit no. 25, Loch valuation report, findings, paragraph 12.) Most importantly, from 1985 onward, the plaintiff and the two defendants evenly divided all profits generated from manicures, product sales and employee hair stylists at The Hair Connection. Even

defense counsel, in his letter to plaintiff dated February 12, 2007, stated his belief that The Hair Connection constituted a partnership. All of these factors lead to the conclusion that the plaintiff and defendants operated The Hair Connection as a partnership after 1991.

*Plaintiff's Claim to Enforce Her Rights As a Partner*

When the plaintiff retired from The Hair Connection on June 19, 2007, the winding up of the partnership should have progressed to conclusion. "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished by the winding up, of the business." 15 Pa.C.S. §8351. "Dissolution is caused . . . [b]y the express will of any partner when no definite term or particular undertaking is specified [in the partnership agreement]." 15 Pa.C.S. §8353(1)(ii). "On dissolution, the partnership is not terminated but continues until the winding up of the partnership affairs is completed." 15 Pa.C.S. §8352. A partner "who [has] not wrongfully dissolved the partnership . . . has the right to wind up the partnership . . . ." 15 Pa.C.S. §8359.

The plaintiff and defendants operated The Hair Connection as a partnership at will, in that there was no partnership agreement specifying that the partnership would operate for a definite term or until the completion of a particular undertaking. The plaintiff was entitled by statute to retire from the partnership at any time.

After the plaintiff retired from The Hair Connection, the defendants failed to take part in good faith in the process of winding up the partnership as required by law

despite plaintiff's requests. Instead, the defendants wrongfully and intentionally excluded the plaintiff from all management of the partnership, refused to allow plaintiff to inspect partnership records and continued to operate the business (as The Hair Connection LLC) without compensating plaintiff for the value of her interest in the partnership.

The Uniform Partnership Act addresses the rights of a retiring partner when the other partners comprising the partnership elect to continue the business.

"When any partner retires or dies and the business is continued . . . without any settlement of accounts as between him . . . and the person or partnership continuing the business, . . . he . . . as against such persons or partnership may have *the value of his interest at the date of dissolution ascertained and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership* with interest or, at his option . . . in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership. . . ." 15 Pa.C.S. §8364. (emphasis added)

Plaintiff was denied this opportunity granted her by statute. Her request for an accounting was refused. She was frozen out of participation in the partnership which was best illustrated by the draining of the partnership account and the meeting held by which all, except plaintiff, were invited by defendants. Then the defendants continued the business of the partnership, but as a limited liability company formed behind the back of plaintiff. Under 15 Pa.C.S. §8364, the plaintiff is entitled to collect from the defendants the value of her interest in The Hair Connection at the date of her retirement.

*Plaintiff's Claim for Conversion*

The plaintiff states an alternative theory of recovery by arguing that the defendants wrongfully converted the partnership property of The Hair Connection. According to 15 Pa.C.S. §8342(a), "[a] partner is co-owner with his partners of specific partnership property, holding as a tenant in partnership." Moreover, "[a] partner . . . has an equal right with his partners to possess specific partnership property for partnership purposes, but he has no right to possess the property for any other purpose without the consent of his partners. 15 Pa.C.S. §8342(b)(1).

The acts of the defendants amount to a conversion of the partnership property of The Hair Connection. First, the defendants, without notifying plaintiff or gaining her consent, removed all of the funds of the partnership's savings and checking account and used these funds to capitalize their limited liability company, The Hair Connection LLC. Second, the defendants, again without plaintiff's consent or knowledge, used the trade fixtures of The Hair Connection to carry on the business of their limited liability company. In forming and operating the limited liability company, the defendants used partnership property to their benefit and to the detriment of their partner, the plaintiff. Defendants had no right to remove funds from the partnership accounts or utilize the fixtures of the partnership for their own benefit without gaining the consent of the plaintiff.

For these reasons, plaintiff is entitled to damages equal to the value of her interest in The Hair Connection at the time of her retirement.

## *The Value of Plaintiff's Interest in*
## *The Hair Connection*

At trial, the plaintiff presented the expert testimony of Bruce Loch, a certified public accountant and a certified forensic accountant. Mr. Loch offered his expert opinion as to the value of the plaintiff's interest in The Hair Connection at the time of her retirement on June 19, 2007. Mr. Loch utilized the excess earnings valuation method to measure the plaintiff's share of the partnership's tangible assets as well as the good will she brought to the business. The excess earnings valuation method is an accepted accounting method to determine a partner's share in a business. I use that in the present case. I accept aspects of Mr. Loch's testimony where it is based on credible evidence. On the other hand, some opinions that he expressed were vague or did not have adequate basis in the evidence so I reject those.

Mr. Loch accurately stated that the sum of The Hair Connection's tangible assets (bank accounts, petty cash, security deposit, general supplies and beauty supplies) amounted to $24,631. Plaintiff's share of this was $8,210. However, the court rejects Mr. Loch's valuation of the furniture, fixtures and leasehold improvements owned by The Hair Connection. Mr. Loch mistakenly concluded that The Hair Connection retained an interest in leasehold improvements made to the premises leased from Fieldstone. Under the lease agreement, all such improvements became the property of Fieldstone (plaintiff's exhibit no. 2, "lease agreement," exhibit E, paragraph 5), but The Hair Connection did own its furniture and trade fixtures.

The depreciated value of the furniture and trade fixtures was more accurately stated by Erwin Prutzman in a balance sheet he prepared for The Hair Connection on June 30, 2007. Mr. Prutzman valued the property at $6,340.58. (Plaintiff's exhibit no. 25, Loch no. 7.) Plaintiff's one-third share of this value was $2,113.53.

Therefore, the total value of the plaintiff's interest in the tangible assets and trade fixtures of The Hair Connection at the time of her retirement amounted to $10,323.53 ($8,210 plus $2,113.53).

In evaluating the plaintiff's portion of the good will of the business, Mr. Loch attempted to provide a dollar amount equal to the revenue from plaintiff's loyal clients. Mr. Loch valued the earnings of The Hair Connection attributed to plaintiff's good will at $13,794. He reached this number by comparing the personal income of the two defendants from the year (2006) before plaintiff's retirement with their income for the year (2008) after her retirement. While it is true that both defendants experienced an increase in income in the year after the plaintiff's retirement, Mr. Loch's valuation of good will rested on the assumption that defendants' increase in income in 2008 resulted solely from the plaintiff's retirement. However, other reasons existed for the defendants' increased income in 2008, such as new cost-cutting measures and an increase in rates. These other reasons somewhat undercut Mr. Loch's conclusion on this point.

The liabilities of The Hair Connection at the time of plaintiff's retirement equaled $40,456. (Plaintiff's exhibit no. 25.) Outstanding debt on the 2004 business loan from Harleysville National Bank accounted for most of

this debt. Plaintiff's one-third share of this figure amounted to $13,485.

The testimony of the defendants, Roxanne Prutzman and Donna Grimshaw, offered some insight on the value of the plaintiff's good will. Both defendants testified that approximately 22 clients formerly serviced by the plaintiff remained customers at The Hair Connection LLC the successor entity to The Hair Connection. This is a minimization of the number of plaintiff's clients who remained with the business after the retirement. I reach this conclusion based on defendants' questionable credibility on this point and, if there were only 22 clients who remained, that would not adequately explain defendants' increase in income after the retirement even factoring cost-cutting steps, increased rates and defendants' own clients. Defendants continue to benefit from plaintiff's good will. I conclude that the value of good will attributable to the plaintiff equals $4,000.

I applied the excess earnings valuation method to the above figures to determine plaintiff's interest in The Hair Connection at the time of her retirement. First, the value of the plaintiff's good will ($4,000) is capitalized at 20 percent, leaving a total of $20,000. Capitalization accounts for the fact that, in the hair styling industry, clients usually patronize the same stylist for five years or more. Second, the value of the plaintiff's interest in the tangible assets of the partnership ($10,323.53) is added to the capitalized good will attributable to plaintiff ($20,000), leaving a total operating value of $30,323.53. Third, the plaintiff's share of the liabilities of The Hair Connection ($13,485) is subtracted from the total operating value ($30,323.53) for a net operating value of

$16,838.53. Last, the net operating value is discounted at a rate of 25 percent for a lack of marketability. The discount accounts for the fact that a business may at times find it difficult to find willing buyers. After the discount is applied, the final value of plaintiff's interest in the partnership's tangible assets, along with her good will, at the time of her retirement amounts to $12,628.90.

## Punitive Damages

Section 8334 of the Uniform Partnership Act, which is entitled "partner accountable as fiduciary," states: "Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property." 15 Pa.C.S. §8334(a).

The defendants intentionally excluded the plaintiff from what turned out to be a key business meeting dealing with the future of the business. They refused to allow the plaintiff inspection of partnership records. They renewed a lease for business property with Fieldstone without ever obtaining plaintiff's consent. Defendants knew they had an obligation to account to the plaintiff after she retired from the partnership. They participated in the meeting with their accountant, Mr. Gentilotti, for this purpose. Yet they refused to consider any of his proposals to address plaintiff's interest. Defendants, without the consent of the plaintiff, removed all of the funds of The Hair Connection's savings and checking accounts and used these funds to capitalize defendants' limited liability company, The Hair Connection LLC.

The defendants, again without plaintiff's consent or knowledge, used the funds and trade fixtures of The Hair Connection to carry on the business of their limited liability company.

Defendants' conduct in these affairs was consistently offensive and intentionally adverse to the obligation of trust they owed to their other partner, the plaintiff. Their conduct was often devious in the way they excluded plaintiff.

Because the defendants willfully breached the fiduciary duty they owed to plaintiff as I have specified, plaintiff is entitled to collect punitive damages from each defendant. "Punitive damages are awarded to punish a defendant for certain outrageous acts and to deter him *or others* from engaging in similar conduct." *G.J.D. by G.J.D. v. Johnson,* 552 Pa. 169, 176, 713 A.2d 1127, 1131 (1998).

"The standard under which punitive damages are measured in Pennsylvania requires analysis of the following factors: (1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." *Judge Technical Services Inc. v. Clancy* 813 A.2d 879, 889 (Pa. Super. 2002). After consideration of all of these factors, it is proper that each individual defendant pay the plaintiff punitive damages in the amount of $7,500.

### *Defendants' Counterclaim*

In their answer to plaintiff's amended complaint, defendants assert a counterclaim. However, the defendants

did not pursue or argue the merits of the counterclaim at trial. Therefore, the counterclaim is waived. Nevertheless, I make observations about the counterclaim.

The defendants contend that the plaintiff remains liable for the debts of The Hair Connection as well as for the debts of its successor entity, The Hair Connection LLC. Specifically, the defendants argue that, at the time the plaintiff "departed" from The Hair Connection, she was a debtor with defendants for the amount owed to Harleysville National Bank. Therefore, defendants argue that they are each forced to pay one-half of the monthly obligation to Harleysville instead of the one-third obligation they would be paying had plaintiff not left the business. Defendants also assert that, because plaintiff departed the business, each defendant is now required to pay one-half of the operating costs of The Hair Connection LLC, instead of one-third of the costs if plaintiff remained. Finally, the defendants claim that "[a]s a result of the refusal of [plaintiff] to consent to the renewal of the lease (with Fieldstone) for all three of them, the LLC and [the defendants] were forced to accept terms more onerous than the terms of the original lease." All of these claims are baseless.

First, the plaintiff acknowledges that The Hair Connection owed Harleysville $40,456 at the time of her retirement and that her share of this debt amounted to $13,485. For this reason, plaintiff's expert, Mr. Loch, factored in the plaintiff's $13,485 debt when using the excess earnings valuation method to determine the value of her interest in The Hair Connection. As I stated, I ac-

cepted the excess earnings valuation method as a proper valuation tool. Therefore, the value of plaintiff's interest in The Hair Connection has been reduced by $13,485 to account for her share of the debt to Harleysville. In view of this, it would be improper to allow the defendants to separately collect an additional $13,485 from plaintiff.

Second, the plaintiff cannot be held liable for the defendants' costs associated with operating The Hair Connection LLC. If a debt is incurred after dissolution of a partnership and the debt is not incurred as part of the process of winding up the partnership, the debt is not a partnership debt. *Kirby v. Kalbacher,* 373 Pa. 103, 95 A.2d 535 (1953).

After plaintiff announced her retirement, the defendants, instead of winding up the partnership, renewed the lease with Fieldstone and continued to operate the business as The Hair Connection LLC. The defendants have incurred costs as a result of their decision to continue operating the business as a limited liability company without plaintiff's consent. However, these costs connected to operating the limited liability complaint were incurred after dissolution of The Hair Connection and do not relate to the winding up of the partnership. These costs associated with the operation of The Hair Connection LLC, do not constitute partnership debts for which the plaintiff can be held liable. Moreover, if the defendants now bear a greater expense in maintaining their limited liability company, it is due to their conscious decision to exclude the plaintiff from the management of the business, not to any actions of the plaintiff.

For all of the above reasons, the court awards the plaintiff compensatory damages in the amount of $12,628.90. Additionally, the defendants, Roxanne Putzman and Donna Grimshaw, must each pay the plaintiff $7,500 in punitive damages.