Mary NAGLE, Appellee,

v.

James D. NAGLE, Appellee,

v.

Gary Nagle, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 16, 2002.

Filed May 16, 2002.

Edward E. Zang, Altoona, for appellant.

Walter Swartzkopf, Altoona, for Mary Nagle, appellee.

Before DEL SOLE, P.J., BOWES and KELLY, JJ.

BOWES, J.

¶ 1 Gary Nagle has appealed following entry of an equitable distribution award entered in this divorce action between his parents, Mary S. and James D. Nagle. He challenges a number of the divorce court's decisions relating to eighty shares of stock that are titled in Appellant's name.[1] The divorce court concluded that the stock was marital property, imposed a constructive trust on the stock in favor of Appellant's parents, valued the stock for equitable distribution purposes as of the date of distribution, and ordered Appellant to buy-out his parents' interest in the stock. We affirm.

¶ 2 The record indicates the following. On October 21, 1994, Mary Nagle ("Wife") instituted this divorce action against James Nagle ("Husband"). She indicated that she and her husband were married on July 23, 1942, and that they had been separated for more than two years. The record also indicates that the parties actu-

---

1. Appellant owns ninety shares of the stock, and his brother Robert owns ten shares. Only eighty shares are at issue in this appeal.

ally had been separated since approximately 1972, that they had seven children, and that during the 1950s, Wife was a homemaker raising those children. In her divorce complaint, Wife requested alimony, alimony *pendente lite*, costs, counsel fees, and equitable distribution of the marital property. On April 4, 1995, the parties entered a consent order regarding the payment of alimony *pendente lite*, which was set in the amount of $1,000 per month. The matter was referred to a master.

¶ 3 Two master's hearings were held in June 1997, two additional hearings were held in October 1997, and a final hearing was held in January 1998. On May 4, 1998, Wife filed a motion to join Appellant as an additional defendant and filed a third party complaint against him. Those documents contain the following allegations. The primary marital assets consist of land, which is jointly owned by Husband and Wife, and a business located on that land. The business is known as James Nagle's Rebuilt Truck Parts and Sales, Inc. (the "Corporation"). Its stock, which at one time was owned wholly by Husband and was acquired during the marriage, primarily is titled in Appellant's name. Husband transferred his majority interest in the business to Appellant without consideration on January 11, 1995, approximately three months after this divorce action was instituted. At the June master's hearings, the parties stipulated that for equitable distribution purposes, Husband owns eighty percent of the stock. Attached to the joinder petition is an excerpt from the master's hearing wherein Husband stipulated that he owned eighty percent of the stock of the Corporation, and Wife agreed to this stipulation. "[Appellant] was present when [this] stipulation was made." Third Party Complaint, 4/30/98, at ¶ 11.

¶ 4 Husband's expert witness testified that the stock was worth $297,000 while the land was worth $270,000. The parties agreed to this valuation. In addition, Wife's expert witness performed an inventory of the company and determined that its inventory of used truck parts was worth over $2,000,000.

¶ 5 It also was established at the master's hearing that Husband's sources of income were limited to his social security benefits and the company's payment of $2,500 a month on a loan that Husband made to it. However, the evidence established that Husband would withdraw "large amounts" of money from the Corporation for land rental and for repayments of other purported loans. Motion to Join Additional Party Defendant and to Stay Proceedings, 4/30/1998, at ¶ 17.

¶ 6 Wife also averred the following. Husband made the transfer of stock to Appellant to avoid paying Wife the large sum of money that might be due her as a result of any equitable distribution award regarding the $2,297,000 in assets that he owned prior to the stock transfer. Appellant was aware of the divorce proceedings at the time the stock was transferred to him, was aware that these sums may be payable to his mother, and participated in the fraud on her marital rights by accepting the transfer to remove the property from the jurisdiction of the divorce court. The transfer also unjustly enriched Appellant. Wife asked that a constructive trust be imposed on the stock.

¶ 7 Appellant answered the complaint in relevant part as follows. He contended that the company was incorporated after the parties separated. He also denied that the transfer was made to defeat Wife's marital interest, alleging that the transfer was "pursuant to an estate plan." Answer to Motion to Join Additional Defendant and to Stay Proceedings, 6/11/98, at ¶ 18. In addition, Appellant alleged that he paid

consideration for the stock by virtue of his work for the Corporation.

¶ 8 On August 4, 1998, Wife's joinder motion was granted. Appellant then petitioned to re-open the record so that he could dispute the finding that the stock was marital property and the value placed on the stock at the June 1997 hearings. That petition was denied.

¶ 9 Husband filed an answer to the third party complaint, in which he admitted that he owned the "business at the time of separation" and stated that it was "not incorporated until thereafter." Original Defendant's Answer to Third Party Complaint, 8/24/98, at ¶ 7. Husband also made averments similar as to Appellant, alleging that the transfer was pursuant to a valid estate plan and that Appellant paid consideration for the transfer by managing the Corporation.

¶ 10 Wife then replied to the allegations contained in Appellant's pleadings, alleging that the incorporation occurred before separation and that the business had existed as a sole proprietorship for "some time" before it was incorporated. Reply to New Matter, 9/14/98, at ¶ 19. Attached to the reply is a portion of the master's hearings containing Wife's testimony. That testimony confirms the factual averments in Husband's pleadings that the business was started *before* 1972. Furthermore, her testimony indicates that the business was located on the acreage surrounding the marital home and that when it was opened, she helped with the business by answering the telephone, completing paperwork, cleaning the office, and organizing parties. She maintained that she continued to help with the business for five years after the parties' separation.

¶ 11 Also attached to Wife's reply is a portion of the testimony of Robert C. Nagle, another of the parties' sons, taken from the June 4, 1997 master's hearing.

Robert testified that he was involved in the business when it was started, that it was opened fifteen to eighteen months prior to its incorporation, and that when it was incorporated, Husband received 100% of the stock. Robert also stated that the separation date was "well after the incorporation." Master's Hearing, 6/4/97, at 41. Robert testified that the separation occurred at the beginning of 1973, when Husband went to live in a trailer in Martinsburg, Maryland.

¶ 12 On November 30, 1998, Appellant filed a "counter complaint" requesting attorney's fees and costs incurred in defense of the third-party claim. He claimed that the action was frivolous and vexatious. Thereafter, Wife moved to bifurcate the proceedings, a divorce decree was entered on December 11, 1998, alimony *pendente lite* was continued until the economic issues were resolved, and Husband was relieved of his obligation to provide medical insurance for Wife.

¶ 13 On February 1, 1999, a hearing was held regarding the issue of whether a constructive trust should be imposed. Husband testified that he did not know the date of separation. However, Robert Nagle testified that he recalled specifically that while Husband left the marital residence in 1972, he returned and was living there when the Corporation was formed on October 26, 1972. Robert stated that the parties did not permanently separate until late 1972 or early 1973, and his father was sleeping overnight occasionally at the house through 1974 and even into 1975. Robert testified that his mother and father were living together when the business was incorporated, a fact he remembered because he drove his father to the incorporation. Appellant conversely testified that Husband and Wife were separated when the business was incorporated.

¶ 14 Husband transferred the stock as follows. Appellant and Robert each received ten shares in 1988. On January 11, 1995, the controlling interest was transferred to Appellant. After the hearing, the divorce court found that eighty shares of the stock had been transferred to Appellant without consideration and that the transfer unjustly enriched Appellant to the detriment of Wife and Husband. While Appellant did work in the business, the divorce court noted that he had been compensated consistently with a managerial salary that had increased over the years. The court concluded that Appellant's "efforts in managing the business were compensated by salary, and the extremely, large transfer of the controlling stock (eighty (80) shares …) was not justifiable compensation." Trial Court Opinion, 8/24/99, at 12.

¶ 15 The divorce court acknowledged that while the stock might have been transferred pursuant to an estate plan, "there is no explanation or involvement of [Wife's] potential interest in the estate plan." *Id.* In addition to imposing a constructive trust in favor of Husband and Wife, the divorce court also concluded that the transfer was a fraudulent transfer with respect to Wife under the Uniform Fraudulent Conveyance Act. In making this determination, the divorce court observed that the following facts established that Husband retained control over the Corporation even after the January 1995 stock transfer:

> Both Gary Nagle and the bookkeeper, Theresa Tutko, have testified the corporation will pay for any bill submitted by James Nagle and that James Nagle has absolute authority and discretion to submit any bill he [chooses], and that the corporation will unwaveringly pay the bill. (Evidentiary hearing, February 1, 1999, pp. 9–11, 54 and 146). As a result, we see James Nagle still exerts complete and unfettered control over the corporate assets. Still further, there is a corporate debt which is outstanding to James Nagle, and regular payments are made to James Nagle on that Note, however, there is no sufficient physical evidence to prove this loan was made. Rather, what exists is an unsigned invoice showing money lent to the corporation by James Nagle. (Hearing, February 1, 1999, transcript pp. 55, 147–149 and 151–157). Further, these loans have been deemed "stockholder loans" up until 1997. (Evidentiary Hearing, February 1, 1999, transcript p. 155). However, James Nagle has not been a stockholder in the corporation since 1995. (Evidentiary Hearing, February 1, 1999, transcript p. 47 and 65). Still further, it has been the testimony of Mr. Delozier, a previous employee, that James Nagle was the "boss" and controlled the business until at least 1997, approximately two (2) years after the transfer. (Evidentiary Hearing, February 1, 1999, transcript p. 30). As a result of these factors, it is obvious that James Nagle has reserved benefit in the transferred property for his own behalf.
>
> Still further we note James Nagle has a residence in Maryland which is owned by the corporation which James Nagle has possession and control over at all times. (Hearing, February 1, 1998, transcript p. 58). In fact, James Nagle has testified that he believes he owns the house, and utilizes the property as if he had title in fee simple. (Evidentiary Hearing, February 1, 1999, transcript p. 6). Again, we note this evidences an unfettered control over corporate assets and a retention of possession of a corporate asset.

*Id.* at 15–16.

¶ 16 The matter was referred to a master, who issued an equitable distribution

recommendation. In that recommendation, the master awarded the stock equally to Husband and Wife, valued the eighty shares in the business at $281,600, and ordered Appellant to pay his parents for the stock as well as to execute financing documents in order to secure their interest in it. Appellant filed exceptions. He argued that the master erred in distributing the stock equally between Husband and Wife because it was not marital property. He excepted to the value of the stock being set at $281,600. He also excepted to being ordered to pay $4,000 per month to his parents at six percent interest "because [Appellant] is the owner of the stock, free and clear of [Husband and Wife,] as again said stock was not a marital asset." Exceptions to Master's Report, 10/25/00, at ¶2. For the same reason, i.e., that he owned the stock, Appellant excepted to the master's ruling that he had to file financing statements and other documents to secure his payment to his parents. Wife filed exceptions to the master's failure to include any value of the inventory in the value placed on the stock. Husband also filed exceptions.

¶17 On March 26, 2001, the divorce court denied the exceptions without actually re-entering the master's equitable distribution award, and Appellant filed the appeal at number 643 WDA 2001 from this order. On April 6, 2001, the divorce court corrected its oversight and entered a final order relating to equitable distribution, as follows:

1) The parties, Mary S. Nagle and James D. Nagle, shall continue to own the business real estate situate in Allegheny Township, Blair County, Pennsylvania, consisting of approximately 5.39 acres (and having a value for distribution purposes of Two Hundred Seventy Thousand Seven Hundred and 0/100 ($270,700.00) dollars, as tenants in common.

2) The parties, Mary S. Nagle and James D. Nagle, are entitled to equal distribution of the value of Eighty (80) Shares of the corporate stock for the corporation known as James Nagle's Rebuilt Truck Parts and Sales Incorporated, that stock having a total value for distribution purposes of Two Hundred Eighty–One Thousand Six Hundred and 0/100 ($281,600.00) dollars.

3) Gary Nagle is directed to pay the sum of Two Hundred Eighty–One Thousand Six Hundred and 0/100 ($281,600.00) dollars on account of the eighty (80) shares of corporate stock that he previously acquired, with payments to be made to Mary S. Nagle and James D. Nagle of Two Thousand and 0/100 ($2,000.00) dollars per month each [for a total payment of Four Thousand and 0/100 ($4,000.00] dollars per month), with interest accruing on the unpaid balance due and owing of six (6%) percent per annum; provided, however, that at any time Mr. Nagle may pay to each party the remaining balance due to that party without penalty.

4) In order to secure payment of the Two Hundred Eighty–One Thousand Six Hundred and 0/100 ($281,600.00) dollars due from Gary Nagle to James D. Nagle and Mary S. Nagle, the said Gary Nagle, in his capacity as majority owner of the corporation known as James Nagle's Rebuilt Truck Parts and Sales, Inc., shall execute UCC–1 Financing Statements and any other documents required by counsel for Mary S. Nagle and/or James D. Nagle, in order to properly secure the remaining balance owed by Gary Nagle.

5) Neither party shall be entitled to any alimony nor shall any party receive

any contribution on account of his costs or expenses in the divorce action from the other party.

6) Except as otherwise set forth herein, all items of property not specifically referenced shall become the property of the party possessing the same.

7) Each party shall execute any and all documents necessary to give full force and effect to the provisions of this order.

Trial Court Order, 4/6/01, at 1–2. Appellant filed the appeal at 817 WDA 2001 from this order.

¶ 18 Appellant assails the finding that the stock was marital property. Initially, we note that when we review an equitable distribution order, our standard of review is limited, and we will not disturb the divorce court's decision unless there is an abuse of discretion or error of law. *Brody v. Brody,* 758 A.2d 1274 (Pa.Super.2000). Furthermore, the determination of whether an asset is a marital asset is a matter with the sound discretion of the divorce court. *Id.*

¶ 19 The definition of marital property is found in 23 Pa.C.S. § 3501 which provides in relevant part that marital property includes "all property acquired by either party during the marriage, including the increase in value, prior to the date of final separation, of any nonmarital property acquired pursuant to paragraphs (1) and (3)." There are exceptions to this definition, but none applies in this case. More importantly, included within the definition of marital property is property acquired *after* separation until the date of divorce if that property is acquired "in exchange for marital assets." 23 Pa.C.S. § 3501(a)(4). Finally, 23 Pa.C.S. § 3501(b) states:

(b) Presumption.—All real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a).

¶ 20 By focusing on whether the incorporation occurred before or after the separation, Appellant misses the point. There is no question that Husband acquired the business as a sole proprietorship in 1971 when the parties were not separated; therefore it was marital property. Even if the incorporation occurred after separation, Husband's receipt of 100% of the stock in exchange for his sole proprietorship interest constituted an acquisition of property in exchange for marital property. The stock, therefore, was marital property.

¶ 21 Furthermore, we reject Appellant's challenges to the divorce court's determination that the incorporation preceded separation. Appellant argues that Robert is not worthy of belief on this issue since he was an interested party who sided with their parents in this matter. Appellant continues that Chris Patete, Husband's accountant in 1972, should be credited instead, since he was a disinterested witness. Mr. Patete testified that to his knowledge, the parties were separated when the Corporation was formed. He stated the Corporation was formed because Husband and Wife were having marital problems, which were the motivating factors for the incorporation.

¶ 22 The law is clear that absent an abuse of discretion, the trial court's findings of fact, if supported by credible evidence of record, are binding upon a reviewing court. *Wellner v. Wellner,* 699 A.2d 1278 (Pa.Super.1997). Since the court's determination regarding the date

of separation is supported by Robert's testimony, it must be affirmed. *Id.* Furthermore, the court was relying upon Robert's personal knowledge of where Husband was living in 1972 rather than the accountant's surmise of what was transpiring. Mr. Patete knew that Husband and Wife were experiencing marital problems. However, Husband and Wife could have experienced marital problems without being separated.

¶ 23 We also observe that Appellant stresses that Wife never participated in the business. However, there is no requirement that a spouse participate in the management of an asset in order for that asset to be considered a marital asset. A marital asset is one that is acquired during the marriage with clearly delineated exceptions not applicable herein. Further, Appellant's position is eroded by Wife's testimony that she did contribute to the operation of the business for six years.

¶ 24 Next, we address the propriety of the imposition of a constructive trust upon the eighty shares of stock at issue. Appellant contends that it improperly was imposed because there was no unjust enrichment.[2] In support of this contention, he points to two factors: 1) he worked for the company; and 2) the transfers of stock were made as part of a valid estate plan.

A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. *Yohe v. Yohe,* 466 Pa. 405, 353 A.2d 417 (1976); *Denny v. Cavalieri,* 297 Pa.Super. 129, 443 A.2d 333 (1982). The

necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. *Id.* The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment. *Roberson v. Davis,* 397 Pa.Super. 292, 580 A.2d 39 (1990).

*DeMarchis v. D'Amico,* 432 Pa.Super. 152, 637 A.2d 1029, 1036 (1994); *see also Santoro v. Morse,* 781 A.2d 1220, 1231 (Pa.Super.2001).

¶ 25 Appellant challenges the imposition of a constructive trust by arguing that the transfers were made pursuant to a valid estate plan. He notes that he received fifteen shares of stock on December 23, 1993, fourteen shares on January 31, 1994, and fifteen shares on January 11, 1995, and that the transfers were made pursuant to recommendations by an estate planner. This argument may have had some validity if Wife had participated in that plan. However, it is clear that Husband transferred Wife's interest pursuant to this estate plan without her consent. Indeed, she had no knowledge of the transfer until 1998, immediately before she moved to join Appellant as a party in this action.

¶ 26 Appellant also suggests that there was adequate consideration for the transfer because he worked for the Corporation. Appellant ignores the fact that he was paid a salary for this work. We cannot confer vested property rights to a gift by virtue of employment for which a salary is paid. Indeed, Appellant concedes that his broth-

**2.** The dissent would reverse this portion of the order and remand for imposition of a constructive trust only as to Wife's interest in the stock. However, Appellant never requests this relief. He assails the imposition of a constructive trust as to all the shares that are titled in his name. Appellant's brief at 48, 66. Our Supreme Court has made it clear that we should not grant relief on the basis of issues not presented to the trial court or raised on appeal. *Knarr v. Erie Insurance Exchange,* 555 Pa. 211, 723 A.2d 664 (1999); *Dollar Bank v. Swartz,* 540 Pa. 369, 657 A.2d 1242 (1995); *Pennsylvania Department of Transportation v. Boros,* 533 Pa. 214, 620 A.2d 1139 (1993).

er, Robert, also was working for the Corporation until 1996, yet he received none of the transfers of stock in 1993, 1994, and 1995.

¶ 27 Finally, Appellant attacks the divorce court's determination that Husband retained control over the corporate assets after the stock was transferred. However, this determination is supported by the testimony of the Corporation's bookkeeper that Husband was permitted to write checks to himself, that he lived on real estate owned by the Corporation, and that he regularly was paid for a "loan" that he never actually made to the Corporation.[3]

¶ 28 Appellant next argues that the stock should have been valued at zero, the value on the date of separation, rather than its value as of the date of distribution because he and his father worked to increase its value after separation. He relies upon *Diamond v. Diamond,* 360 Pa.Super. 101, 519 A.2d 1012 (1987). In *Diamond,* we observed that the Divorce Code does not set a date for valuation of marital assets and that the trial court has the discretion to choose a valuation date that best effectuates economic justice between the parties, which is the overriding goal of the Divorce Code. In *Diamond,* the divorce court chose the separation date for valuing one of the marital assets since husband's post-separation efforts increased the value of the asset.

¶ 29 However, the discretion accorded the divorce court in choosing the valuation date was diminished by our Supreme Court's decision in *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). In that case, the Court noted a preference for using the date of distribution for valuation purposes. There had been a considerable amount of time between separation of the parties and distribution. Included in the marital estate were various business interests, including an automobile dealership that may have fluctuated in value widely between separation and distribution. While acknowledging that the Divorce Code does not contain a provision regarding selection of a date for valuation of marital property, the Court concluded that the provisions of the Code relating to equitable distribution imply that a valuation date reasonably proximate to the date of distribution normally should be utilized.

¶ 30 The Court in *Sutliff* recognized that there may be situations where the assets have been disposed of by one of the parties so that current valuation may be impossible to determine. In such cases, the Court concluded the separation date would necessarily have to be used. However, the *Sutliff* Court indicated clearly that in the usual case, the current values of the assets should be used. The Court also stated expressly that this reasoning applied to privately owned business interests.

¶ 31 In line with the *Sutliff* decision, the date of distribution has been the preferred date for determining the value of marital assets. *See Butler v. Butler,* 541 Pa. 364, 371 n. 5, 663 A.2d 148, 152 n. 5 (1995); *Solomon v. Solomon,* 531 Pa. 113, 123 n. 11, 611 A.2d 686, 691 n. 11 (1992); *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382 (1996); *Smith v. Smith,* 439 Pa.Super. 283, 653 A.2d 1259 (1995); *Goldblum v. Goldblum,* 416 Pa.Super. 438, 611 A.2d 296 (1992), *aff'd mem.,* 539 Pa. 246, 652 A.2d 282 (1994); *Downey v. Downey,* 399 Pa.Super. 437, 582 A.2d 674 (1990).

¶ 32 On the other hand, we have observed that there are limited circum-

---

**3.** As we reject Appellant's challenges to the divorce court's decision to impose a constructive trust on the stock, we do not need to review the propriety of its ruling that the transfer of stock was a fraudulent transfer.

stances where it is more appropriate to value marital assets as of the date of separation. *Litmans, supra.* However, those circumstances are confined to situations where one spouse consumes or disposes of marital assets or there are other conditions that make current valuation difficult. *See Benson v. Benson,* 425 Pa.Super. 215, 624 A.2d 644 (1993) (closely held family business properly valued as of separation date; value of business, which was under husband's control, would be difficult to value after separation because husband could influence value of business); *McNaughton v. McNaughton,* 412 Pa.Super. 409, 603 A.2d 646 (1992) (same).

¶ 33 In the present case, we believe that the divorce court's valuation of the business should be affirmed for a number of reasons. The distribution date is the preferred date for valuing assets for purposes of equitable distribution and since the business clearly was capable of being valued as of the date of distribution, there is no need for that preference to be disregarded. Furthermore, Appellant was aware of his parents' separation and of his mother's interest in the stock; indeed, the business was incorporated in order to defeat her interest. Appellant continued to work and increase the value of the business despite his awareness of her interest. Appellant now asks that we give the business a value of zero, its purported value as of the date of separation, which hardly would achieve economic justice between the parties.

¶ 34 This observation invokes another significant reason to uphold the valuation award. The divorce court gave a value to the stock that is designed to achieve economic justice in this action. The achieve-ment of economic justice is, in the end, the goal of the Divorce Code. 23 Pa.C.S. § 3502(a). Herein, the court discounted the value of the business significantly. Eighty percent of this business was valued at $281,600. However, the divorce court refused to give Wife any monetary award for the $2,000,000 in inventory, which was acquired by post-separation efforts of Husband and Appellant, held by the business at the time of distribution.[4] Appellant now owns $2,000,000 in used-parts inventory transferred to him by his father. Appellant can hardly complain that his efforts were not rewarded.

¶ 35 Appellant's final contention is that the master did not have the *power* to order a buy-out of the stock. Initially, we note that this issue is waived because it was not included in exceptions to the master's report and therefore was neither presented to nor addressed by the divorce court. *See Blatz v. Blatz,* 412 Pa.Super. 449, 603 A.2d 666 (1992). In his exceptions, Appellant argued that the buy-out was incorrect solely because he was the *owner* of the stock and Husband and Wife had no interest in it. He never objected to the master's authority or power to order a buy-out under the Divorce Code. Furthermore, the court does have the authority to order a forced buy-out when in-kind distribution is not practical. *Ryan v. Ryan,* 528 Pa. 186, 596 A.2d 140 (1991); *Gill v. Gill,* 450 Pa.Super. 611, 677 A.2d 1214 (1996); 23 Pa.C.S. § 401(c) (divorce court is given full equity power to "grant such other relief or remedy as equity and justice require").

¶ 36 The divorce court's Solomon-like approach achieved economic justice between Husband and Wife. Economic jus-

---

4. In making this observation, we do not mean to suggest that there was error in this regard. Rather, this fact is set forth merely to demonstrate that Appellant's main complaint, which is that his years of effort in building the value of the business have gone unrewarded, is without merit.

tice is the overriding goal of the Divorce Code. We commend the Honorable Jolene Grubb Kopriva for achieving a just result in a very complex and difficult case.

¶ 37 Orders affirmed.

¶ 38 President Judge Del Sole files a Concurring and Dissenting Opinion.

Concurring and dissenting opinion by DEL SOLE, P.J.

¶ 1 I concur in the result reached by the Majority, and most of its holdings. However, I write separately because, on several points, I reach the same conclusions through different reasoning. Additionally, I would remand for a modified remedy.

¶ 2 I agree with the Majority on two relevant points. First, I agree that we need not be concerned with the date of the business' incorporation, because there is no question the business existed, in some form, prior to the parties' separation, and, under 23 Pa.C.S.A. § 3501(a)(4), all property acquired in exchange for marital assets constitutes marital property. Thus, whether the Husband owned the stock at the time of separation, or owned a sole proprietorship for which he received the stock, is irrelevant.

¶ 3 I also agree with the Majority that a spouse can not use a claim of "estate planning" and unilaterally distribute marital assets to defeat another spouse's equitable distribution claim.

¶ 4 Further, I agree with the conclusion that the conveyance of stock in this case was fraudulent, and, accordingly, agree that the imposition of a constructive trust was appropriate. However, unlike the Majority, I do not believe we need to answer the question of whether a marital asset can be distributed as compensation to a paid employee in order to affirm the trial court's decision. Rather, I would affirm the decision because, as the trial court

found, sufficient evidence of a fraudulent conveyance was introduced at the hearing.

¶ 5 Additionally, on the issue of the imposition of the constructive trust and the resultant award of the stock to Husband and Wife, I would remand for a different remedy. Rather than force Appellant to repay both Husband and Wife for the full value of the stock, I would allow whatever portion of the stock can be attributed solely to Husband to remain Appellant's. This action is concerned only with the amount of stock Wife has a right to as her share of the marital estate. The unjust enrichment caused by the fraudulent transfer was detrimental only to Wife's interests. Thus, a remedy to protect her interests should be limited to that goal. Husband is free to distribute any or all of his share of the marital estate. Accordingly, I would remand for a determination of what portion of Appellant's stock rightfully belongs to Wife, and order the remedy to be limited to that stock.

¶ 6 The Majority disagrees with my proposed revised remedy analysis, finding this issue is beyond the scope of this appeal. However, in my view, Appellant's challenge to the larger issue of the propriety of the imposition of the constructive trust encompasses the issue of the propriety of the method by which the constructive trust was imposed and executed.

¶ 7 Finally, while I agree with the Majority's conclusion that the trial court's decision to value the business on the date of distribution was proper, I do so on the basis of the preference of this Commonwealth's courts for this method and the lack of a compelling reason to do otherwise. I do not subscribe to the apparent significance the Majority places on Appellant's knowledge of his parents' separation and his subsequent continuation of his

work at the business. Majority Opinion at 18. I believe these factors are irrelevant.