J-S68040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STANLEY E. ROMANOSKI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DEBRA E. GRAD, | : | |
| | : | |
| Appellee | : | No. 982 EDA 2014 |

Appeal from the Order entered on March 3, 2014
in the Court of Common Pleas of Philadelphia County,
Domestic Relations Division, No. D 09068496

BEFORE: ALLEN, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:  **FILED DECEMBER 15, 2014**

Stanley E. Romanoski ("Husband") appeals from the Order equitably distributing the marital property owned by Husband and his former wife, Debra E. Grad ("Wife").  We affirm.

Husband and Wife married on July 1, 2001, and separated in April 2009.  The parties had two children together during their marriage.  Additionally, Wife has a daughter, Rachel, from a previous marriage.  After the initiation of the divorce proceedings,[1] the Divorce Master issued a Report and Recommendation concerning equitable distribution of the parties' marital property in September 2013.  In response, Husband filed a Praecipe for Trial *De Novo* with the trial court.

---

[1] We observe that Husband sought and was granted alimony *pendente lite* ("APL").  Husband continues to receive a monthly APL payment from Wife of $550.00.

On February 18, 2014, the trial court conducted a *de novo* hearing on the economic issues in the divorce proceedings. Subsequently, on March 3, 2014, the trial court issued a Decree and Order, divorcing the parties from the bonds of matrimony, and distributing their marital property. Both parties filed Motions for Reconsideration. On April 11, 2014, the trial court conducted a hearing (hereinafter "reconsideration hearing"), at the close of which the court denied both parties' Motions for Reconsideration.[2] In response, Husband timely filed a Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, after which the trial court issued a Pa.R.A.P. 1925(a) Opinion.

On appeal, Husband presents the following issues for our review:

1. Whether the trial court erred in excluding the balance of TruMark Account No. 2266430 from the marital estate and by concluding that Wife overcame the presumption that said account was marital in nature[?]

2. Whether the trial court erred in attributing debt solely to Husband as to Bank of America Credit Card No. 5445 and AT&T Credit Card No. 1800[,] and by finding that Wife overcame the presumption that said debt is marital in nature[?]

3. Whether the trial court erred in attributing an erroneous value to the parties['] Charles Schwab account[,] in disregard of the weight of the evidence[?]

---

[2] At the reconsideration hearing, the trial court judge found as follows regarding Husband's continued receipt of APL: "I am putting it on the record that I think part of this appeal and part of this reconsideration and part of everything is [H]usband's attempt to continue receiving APL." N.T., 4/11/14, at 36.

4. Whether the trial court erred in failing to award Husband separate items of personalty owned by Husband prior to the marriage[, and w]hether the trial court erred in failing to award Husband any items of marital personalty as requested[?]

Brief for Husband at 5.

We review an equitable distribution order according to the following standard:

> The equitable distribution of marital property is within the sound discretion of the trial court and its decision will not be disturbed on appeal absent an abuse of discretion. Under the abuse of discretion standard, we are not to usurp the trial court's duty as the finder of fact. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. However, an abuse of discretion will be found by this Court if the trial court failed to follow proper procedure or misapplied the law.

**Dean v. Dean**, 98 A.3d 637, 640 (Pa. Super. 2014) (citation and ellipses omitted). "Furthermore, the determination of whether an asset is a marital asset is a matter with the sound discretion of the divorce court." **Nagle v. Nagle**, 799 A.2d 812, 818 (Pa. Super. 2002).

"In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Childress v. Bogosian**, 12 A.3d 448, 455 (Pa. Super. 2011) (citations, brackets and quotation marks omitted).

In equitable distribution disputes, "[t]he finder of fact is entitled to weigh the evidence presented and assess its credibility." *Smith v. Smith*, 904 A.2d 15, 20 (Pa. Super. 2006). In so doing, "[t]he fact finder is free to believe all, part, or none of the evidence[,] and the Superior Court will not disturb the credibility determinations of the court below." *Id.* (citation omitted). Finally, it is well established that, "[i]f supported by credible evidence of record, the trial court's findings of fact are binding upon the appellate court." *Green v. Green*, 69 A.3d 282, 285 (Pa. Super. 2013).

Husband first argues that the trial court improperly excluded from the marital estate the funds in an account that Wife held, in her name alone, with TruMark under account number 2266430 (hereinafter "the TruMark Account"). *See* Brief for Husband at 8-11. Husband points out that

> [t]he [trial] court reasoned that the funds [in the TruMark Account] originated from [Wife's] former spouse[,] in the nature of child support for [Wife's] child[, Rachel,] and reasoned that this was sufficient to exclude the funds from the marital estate. [Husband] disagrees that this is permissible reasoning under the law.

*Id.* at 8. Husband asserts that the funds in question were undisputedly acquired during the parties' marriage, and points out that there is a statutory presumption that all property acquired by either party during the marriage is marital property, unless one of the enumerated statutory exceptions applies. *Id.* (citing 23 Pa.C.S.A. § 3501(b)).

In its Pa.R.A.P. 1925(a) Opinion, the trial court addressed this claim as follows:

The TruMark Account … was titled in Wife's sole name. Based on the evidence presented and testimonies of both parties, the [trial c]ourt found that this account was earmarked specifically for the support of Rachel, a child not of the marriage …. This was confirmed by Husband during his testimony, [wherein he stated] "that was an account I believe [Wife] put child support from her first husband in." [N.T.,] 2/18/2014[,] at 28[.] It should also be noted, no testimony was presented that the [TruMark A]ccount was used for marital purposes nor used for any household purpose.

Moreover, at the … reconsideration hearing, the [trial c]ourt found [that], "based on the testimony of the parties, th[e] money [in the TruMark Account] was clearly earmarked for child support of [Rachel]. [Wife] and the father of [Rachel] agreed that they would take that money and put it in the account for the benefit of [Rachel,] and that's what th[e trial c]ourt i[s] finding." [N.T.,] 4/11/2014[,] at 14[.]

Trial Court Opinion, 6/13/14, at 4. Our review confirms that the trial court's factual findings are supported by the record. The money in the TruMark Account belongs to Rachel, and is not marital property. Accordingly, the trial court properly ruled that this money was not subject to equitable distribution. **See Nagle, supra** (stating that "the determination of whether an asset is a marital asset is a matter with the sound discretion of the divorce court.").

Next, Husband argues that the trial court erred by attributing solely to him debt that the parties had on two of their credit cards, which were titled in Wife's name alone: a Bank of America credit card ("the BofA Card"); and an AT&T credit card ("the AT&T Card"). **See** Brief for Husband at 11-13. Specifically, Husband challenges the trial court's finding that the charges he placed on these credit cards were used solely for the benefit of Husband and

his separate business, and that Wife had no knowledge that Husband had made some of these purchases. *Id.* at 11-12. According to Husband, the trial court improperly ignored evidence of record that many of the purchases were for improvements to the parties' home, and regular household expenses. *Id.* at 12. Additionally, Husband argues, "[s]ince the charges were incurred during the parties['] marriage and prior to separation, all of the debts are marital, including any for Husband's business[,] from which [Wife] benefitted." *Id.* at 13.

In its Opinion, the trial court addressed Husband's claim as follows:

> The [BofA] Card … had a balance of $3,986.00 on the date of separation …. [T]he parties shall equally divide this amount. In the ensuing month, charges were incurred on [the BofA Card] amounting to $13,000.00. However, after review of the charges incurred on this account, the [trial c]ourt finds that [] Husband used this account to his benefit, for his business, without the consent or knowledge of Wife. Therefore, Husband will be solely liable for the increase in debt that occurred thereafter. Husband will have to reimburse Wife the sum of $12,034.00 ($16,020.00-$3,986.00).

> The [trial c]ourt noted [at the reconsideration hearing that] "the court painstakingly went down each and every single transaction. A lot of these charges were late payments, and I'm going to attribute every single late payment to [Husband] because he changed the address to the account, and [W]ife didn't even know that he was getting bills." [N.T.,] 4/11/2014[,] at 22[.] [The trial court further found at the hearing that] "[Wife] found out when she started getting calls from the credit card company that there were non-payments, aside from the fact that … 90 percent of the charges – at a minimum 90 per cent – were for [H]usband's business." [*Id.*] at 23[.]

> As with the aforementioned, the [trial c]ourt finds, after review of the charges incurred, that [the] AT&T Credit Card … had a balance as of May 2009 [in the amount of] $6,621.00, all

of which should be [] subject [to] reimbursement by Husband to Wife[,] as the [AT&T Credit C]ard was used solely by [] Husband for work[-]related expenses.

Trial Court Opinion, 6/13/14, at 4-5 (emphasis omitted).

Our review confirms that the trial court's above-mentioned factual findings are supported by competent evidence of record; therefore, we are bound by these findings. *See Green*, 69 A.3d at 285. Moreover, the trial court credited Wife's testimony that Husband had made many of the purchases in question for the sole benefit of his business, without her knowledge, and discredited Husband's testimony to the contrary. *See* N.T., 4/11/14, at 22-23. We may not disturb the trial court's credibility determination or its weighing of the evidence. *See Smith*, 904 A.2d at 20. Finally, we observe that regarding Husband's claim that, since the charges in question were made during the parties' marriage, the debt created therefore is necessarily marital debt, this claim lacks merit. Wife did not authorize the purchases, which were made for Husband's sole benefit. Therefore, we discern no error by the trial court in determining that the debt associated with the AT&T Card and the BofA Card was solely attributable to Husband.

In his third issue, Husband argues that the trial court erred in attributing an erroneous value to the parties' Charles Schwab account. *See* Brief for Husband at 7, 14. Husband asserts that "[t]he [t]rial [c]ourt indicated that no evidence had been submitted by [Husband regarding the Charles Schwab account], which is not factual, and instead relied on []

documents submitted by [Wife] that did not evidence the value of the account." *Id.* at 7.

At the reconsideration hearing, the trial court observed that Husband and Wife had submitted two separate, "contradictory" written statements concerning the amount of money in the Charles Schwab account, both of which the court took into consideration. N.T., 4/11/14, at 27-28. Therefore, there is no merit to Husband's claim that the trial court failed to consider the evidence he submitted to the court on this issue. After considering both parties' statements, and hearing argument from their counsel regarding the value of the Charles Schwab account, the trial court "f[ou]nd that [W]ife's evidence was more credible than [H]usband's evidence[.]" *Id.* at 30. This Court may not disturb the trial court's credibility determination. *See Smith*, 904 A.2d at 20.

Finally, Husband argues that the trial court erred by disregarding his request that the court order Wife to return to Husband items of personal property, which he had purchased prior to the marriage, and many items that he and Wife jointly purchased during the marriage. *See* Brief for Husband at 15-16.

A review of the testimony at the reconsideration hearing reveals that Husband had requested an *extensive* list of items contained in the marital household (hereinafter referred to as "the requested personalty"). *See* N.T., 4/11/14, at 30-33; *see also id.* at 31 (wherein the trial court judge stated

that "[Husband] doesn't want everything; he just wants everything under that roof."). The trial court also observed at the reconsideration hearing that Husband had unilaterally removed from the marital household a large quantity of tools worth approximately $3,500.00. *Id.* at 34. Concerning Husband's claim for the requested personalty, the trial court reasoned that Husband's having taken these valuable tools resulted in an "almost equal trade." *Id.* at 34, 37; *see also id.* at 39 (wherein the court noted that regarding Husband's "testi[mony] that very few items were in the home prior to the marriage, … I didn't find him credible, because this was a premarital home – [Wife's] home, in which she lived."). The trial court further noted that, regarding the list of the requested personalty that Husband presented to the court, "[Husband] prepared the list and he never presented the list to [] [W]ife until we came to this trial. So, he never afforded [W]ife the opportunity to return anything because she didn't even know the items that he wanted." *Id.* at 38-39. Based upon the foregoing evidence, and the trial court's credibility determinations, we conclude that the court properly exercised its broad discretion in refusing to order Wife to give Husband the requested personalty.

Because we discern no abuse of discretion or error of law by the trial court in equitably distributing the parties' marital property, and the court's factual findings are supported by the record, we affirm the Order on appeal.

Order affirmed.

J-S68040-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2014