J-S21045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD HABERERN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TERRY SCHAFFER, | |
| Appellant | No. 3134 EDA 2014 |

Appeal from the Judgment Entered December 30, 2014
in the Court of Common Pleas of Lehigh County
Civil Division at No.: 2012-C-4340

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 21, 2015**

Appellant, Terry Schaffer, appeals from the judgment entered pursuant to the trial court's decision declaring Appellee, Richard Haberern, to be the legal and equitable owner of real estate held in constructive trust by Appellant.  We affirm.

In its May 15, 2014 opinion, the trial court aptly sets forth the relevant facts and procedural history of this case, as follows.

> This dispute concerns a contested title to realty located in Schnecksville, Pennsylvania. . . .
>
> While still married to his former wife, [Appellee] became romantically involved with [Appellant].  After the two had become acquainted through a men's "chat room" on the internet, they arranged to meet in person for the first time at a shopping

---

[*] Retired Senior Judge assigned to the Superior Court.

outing at Dick's Sporting Goods in the early morning hours on the Friday following Thanksgiving Day in 2007. They shopped for [k]ayaks, and thereafter began seeing each other more frequently. Their relationship progressed to include intimate physical relations.

In November of the following year, [Appellee] became involved in an automobile accident, which he understood to be his fault. Meanwhile, [his] relationship with [Appellant] continued, and after [Appellee] was hospitalized for what he described as a nervous breakdown in February 2009, [his] then-wife commenced divorce proceedings. [Appellant] had an extra bedroom in a house he was renting in Bethlehem, and he invited [Appellee] to stay there. [Appellee] moved in with [Appellant] and their intimate relationship continued. [Appellant] also assisted [Appellee] with expenses, including attorney's fees he incurred in the course of the divorce.

As part of the disposition of marital assets pursuant to his divorce, [Appellee], through a deed dated August 28, 2009, acquired sole title to the couple's former marital home situated on Route 309 in Schnecksville. Meanwhile, after consulting with his insurance agent in connection with the 2008 motor-vehicle accident, [Appellee] had concluded it would be advisable to transfer assets out of his name in the event a lawsuit were to follow the accident. [Appellee] and [Appellant] discussed transferring the title into [Appellant's] name, and it was agreed that the property would temporarily be titled in the latter's name until any claim arising out of the November 2008 motor vehicle accident was resolved, at which point the property would be conveyed back to [Appellee]. Accordingly, shortly after [Appellee] acquired title to the property in August 2009, [he], on September 11, 2009, executed a deed transferring the property to [Appellant] for one dollar.

[Appellant] paid for the attorneys fees and transfer taxes and both men moved into the property, which the couple shared with another man. [Appellee], in August 2009, changed his will to name [Appellant] as executor and sole beneficiary, believing him to be "the best friend in the whole world." . . . The couple also shared expenses and exchanged gifts. . . .

Relations for the couple, however, eventually became strained, culminating in a falling out in October 2011. . . . Hard

feelings ensued, resulting in, among other things, [Appellee] moving out of the Schnecksville home and [Appellant] filing a lawsuit demanding repayment of [a] $2,000 . . . automobile [loan]. [Appellee], in this action, [sought] relief in the form of an equitable decree declaring that the Schnecksville property be deemed to have been held in trust by [Appellant] pursuant to the circumstances and understanding of the parties at the time the deed was executed in September 2009.

Opposing that demand, [Appellant] claim[ed] he paid $100,000 as full and fair consideration for the property. . . .

(Trial Court Opinion, 5/15/14, at 1-3).

The court held a non-jury trial on October 3, 2013, and filed a decision on May 5, 2014, declaring that Appellant held the subject real estate for Appellee in a constructive trust. Appellant filed post-sentence motions, which the trial court denied on October 13, 2014. Appellant timely appealed.[1]

_____

[1] Appellant filed a timely statement of errors on December 3, 2014 pursuant to the trial court's order, and, on December 8, 2014, the court filed a statement in which it relied on its May 15, 2014 memorandum opinion. *See* Pa.R.A.P. 1925.

Appellant purported to appeal from the trial court's order denying his post-trial motions. However, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions." *Commonwealth Fin. Systems, Inc. v. Smith*, 15 A.3d 492, 493 n.1 (Pa. Super. 2011) (citation omitted). We have amended the caption accordingly.

We also note that, on December 22, 2014, this Court issued a Rule to Show Cause because our review of the docket revealed that judgment had not been entered on the verdict. On December 30, 2014, Appellant filed a praecipe for judgment. Therefore, because judgment has now been entered in this matter, we consider his appeal timely. *See Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 525 n.1 (Pa. Super. 2006).

Appellant raises five questions for our review:

1.      Did the [t]rial [c]ourt err or abuse its discretion when it concluded that [Appellee] met the heavy burden of proof necessary to establish a constructive trust?

2.      Did the [t]rial [c]ourt err or abuse its discretion when it entered a decision that was unsupported by the evidence presented and was against the weight of the evidence?

3.      Did the [t]rial [c]ourt's credibility determinations lack evidentiary support or amount to an abuse of the [t]rial [c]ourt's discretion?

4.      Did the [t]rial [c]ourt err or abuse its discretion by finding that the property was held in trust rather than finding [Appellee] was merely attempting to advance an alleged verbal agreement that would otherwise be precluded by the Statute of Frauds?

5.      Did the [t]rial [c]ourt err or abuse its discretion by granting equitable relief to [Appellee] when he had unclean hands?

(Appellant's Brief, at 4).

Appellant's first three issues challenge the sufficiency and weight of the evidence in support of the trial court's credibility finding, and imposition of a constructive trust. (**See id.** at 4, 13-19). These claims lack merit.

Our standard of review of a matter involving a court sitting in equity[2] is well-settled:

> Our review of this case is guided by the principles that the scope of appellate review of a decree in equity is particularly limited, and that the findings of the [trial court] will not be reversed unless it appears that the [court] clearly committed an abuse of discretion or an error of law. Where credibility of

---

[2] A constructive trust is an equitable remedy. **See Stauffer**, **infra** at 241.

witnesses is important to a determination, the findings of the [trial court] are entitled to particular weight because the [court] has the opportunity to observe their demeanor. . . .

*DiMaio v. Musso*, 762 A.2d 363, 365 (Pa. Super. 2000), *appeal denied*, 785 A.2d 89 (Pa. 2001) (citation omitted). In fact, "our standard of review makes clear that with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.K. v. S.P.K.*, 102 A.3d 467, 479 (Pa. Super. 2014) (citation and internal quotation marks omitted).

The imposition of a constructive trust, unlike the finding of an express or a resulting trust, does not require that the parties specifically intended to create a trust; it is an equitable remedy designed to prevent unjust enrichment. There is thus no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is whether or not unjust enrichment can thereby be avoided. . . .

A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee . . . . A court . . . in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.

*Stauffer v. Stauffer*, 351 A.2d 236, 241 (Pa. 1976) (citations and quotation marks omitted); *see also Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. 2002), *appeal denied*, 820 A.2d 162 (Pa. 2003).

Further,

[i]t is necessary that both a confidential relationship and reliance upon a promise to reconvey induced by that relationship be shown. . . .

Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship is not confined to a particular association of parties but exists whenever one occupies toward another such a position of advisor or counselor as reasonably . . . to inspire confidence that he will act in good faith for the other's interest.

*Silver v. Silver*, 219 A.2d 659, 661-62 (Pa. 1966) (footnote and citations omitted).

Here, the trial court found that Appellee's version of events was more credible than that of Appellant, and that it supported the grant of a constructive trust. Specifically, the court stated, in pertinent part, that:

In view of the totality of the evidence and the demeanors of the witnesses on the stand, [Appellant's] attempt to deny the extent of his romantic relationship with [Appellee], and thereby characterize the September 2009 transfer as part of an arm's length purchase for $100,000, is simply not plausible. Particularly specious is [Appellant's] effort to deny a history of romantic involvement that began in the form of an online relationship. . . . By contrast, [Appellee's] explanation as to the history and development of the pair's relationship, which proceeded from an internet chat to a first meeting and subsequent romantic and physical intimacy, jibes with the overall evidence and is, therefore, decidedly more convincing.

\* \* \*

. . . All things considered, therefore, including [Appellee's] fuller and more logical explanation of events and his more convincing and forthright demeanor on the stand, establishes by a clear and convincing demonstration that [Appellee] conveyed the property to [Appellant] with the mutual understanding that it would be returned to [him] upon resolution of any potential outstanding claim arising from his November 2008 automobile accident.

(Trial Ct. Op., at 3-4, 6).

We are bound by the court's finding that Appellee's version of events was credible, and decline Appellant's request that we re-weigh the evidence in this regard. (*See* Appellant's Brief, at 18-19); *DiMaio*, *supra* at 365; *see also D.K.*, *supra* at 479. Further, we agree with the court that the credible evidence of record sufficiently established Appellant was under an equitable duty to convey the subject residence to Appellee in order to prevent unjust enrichment, thereby supporting the court's imposition of a constructive trust. *See Stauffer*, *supra* at 241; *Nagle*, *supra* at 819.

Specifically, Appellee testified that he first met Appellant online in 2007 in a "men for men chat room" while Appellee still was married to his then-wife, and living in the marital home they shared in Schnecksville, Pennsylvania. (N.T. Trial, 10/03/13, at 8). He and Appellant arranged to meet face-to-face for the first time at a Dick's Sporting Goods on the Friday after Thanksgiving in 2007. (*See id.*). They began dating shortly thereafter, and their relationship became intimate in 2008. (*See id.* at 9-10). After Appellee was in a 2008 motor vehicle accident, Appellant drove him to and from work. (*See id.* at 11). In February of 2009, after Appellee was hospitalized for two weeks because of a nervous breakdown, Appellant picked Appellee up from the hospital and drove him home to his Schnecksville residence. (*See id.* at 12-13). Upon arriving at the home, Appellee's then-wife, with whom he still lived, served him with divorce

papers, and Appellant offered to let him stay with him in a property he was renting in Bethlehem. (*See id.* at 13). On August 18, 2009, Appellee drafted a last will and testament, and "because of all the help that [Appellant] gave [him], and help [with] getting through [the] divorce, [Appellee] decided to will everything [he] had to [Appellant]." (*Id.* at 20; *see id.* at 21). Appellee also named Appellant executor of the will because he "thought [Appellant] was the best friend in the whole world." (*Id.* at 26; *see id.* at 20).

On August 28, 2009, as part of the divorce settlement, Appellee received the deed to the marital home he had shared with his ex-wife in Schnecksville. (*See id.* at 15). Appellant lived in the Schnecksville property with Appellee. (*See id.* at 36, 38). Shortly thereafter, Appellee's insurance company advised him that "if [he] ha[d] any assets of value, it would be very advised (sic) for [him] to put it in someone else's name," because he could potentially be the subject of a lawsuit arising from the 2008 motor vehicle accident. (*Id.* at 18). Hence, on September 11, 2009, Appellee executed a deed for the Schnecksville home to Appellant, for one dollar in consideration. (*See id.*; *see also* Deed, 9/11/09, at unnumbered page 1). He stated that Appellant agreed to accept the home with the understanding that after the "possible [c]ourt case . . . was settled, then the house would then be deeded back to [him]." (N.T. Trial, 10/03/13, at 19; *see also id.* at 36). However, after an October 2011 falling out, "[Appellant] [changed the

locks, and] locked [Appellee] out of [the Schnecksville] property . . . ." (***Id.*** at 24; ***see id.*** at 25).

Based on the foregoing testimony, and in light of the record as a whole, we conclude that the competent evidence supported the court's findings that the parties shared an intimate romantic relationship, and that they agreed that the Schnecksville property would be held by Appellant and then deeded back to Appellee. ***See DiMaio***, ***supra*** at 365. Therefore, the court did not err when it imposed a constructive trust in order to prevent Appellant's unjust enrichment. ***See Stauffer***, ***supra*** at 241; ***see also Nagle***, ***supra*** at 819. Appellant's first three claims do not merit relief.

In Appellant's fourth issue, he argues that the court's imposition of a constructive trust was precluded by the statute of frauds[3] because Appellee "failed to present sufficient evidence to establish a confidential relationship .

---

[3] The statute of frauds provides:

> All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, That **where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law,** or be transferred or extinguished by act or operation of law, **then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed.**

33 P.S. § 2 (emphases added).

. . [that] was abused by [Appellant]." (Appellant's Brief, at 20). This issue lacks merit.

It is well-settled that "a constructive trust for realty can be based upon oral evidence because statutory law specifically exempts trusts arising by implication or construction of law from the Statute of Frauds." ***Friday v. Friday***, 457 A.2d 91, 93 (Pa. Super. 1983) (citations omitted).

In fact, Appellant admits this long-standing principle of law. (***See*** Appellant's Brief, at 20). He argues, however, that this rule does not apply because the court erred in imposing a constructive trust where a confidential relationship was not established. (***See id.*** at 19-20). We disagree.

As stated more fully above, we conclude that the trial court properly imposed a constructive trust where the parties, who stood in a confidential relationship, agreed to the terms of the property's conveyance. Therefore, because the statute of frauds specifically "exempts trusts arising by implication or construction of law," ***Friday***, ***supra*** at 93, Appellant's fourth issue lacks merit.

In Appellant's fifth claim, he maintains that "[t]he [t]rial [c]ourt erred or abused its discretion by granting equitable relief to [Appellee] when he had unclean hands." (Appellant's Brief, at 20). Specifically, he argues that "the basis for [Appellee's] claim [that the parties had a verbal agreement] was false" and "providing equitable relief to [him] . . . resulted in a windfall[.]" (***Id.*** at 21-22). This issue does not merit relief.

- 10 -

It is well-settled that:

The bar of unclean hands is applicable in Pennsylvania only where the wrongdoing of the plaintiff directly affects the equitable relationship subsisting between the parties and is directly connected with the matter in controversy. Furthermore, the application of the doctrine to deny relief is within the discretion of the [trial court], and in exercising [its] discretion the [trial court] is free not to apply the doctrine if a consideration of the entire record convinces him that an inequitable result will be reached by applying it.

**Stauffer**, **supra** at 244-45 (declining to impose doctrine to upset constructive trust) (citations omitted).

Here, as previously detailed above, we conclude that the court properly found that credible evidence established that the parties agreed to reconvey the Schnecksville property from Appellant to Appellee. Therefore, Appellee did not receive a windfall, and Appellant's argument in this regard must fail. **Stauffer**, **supra** at 244.[4]

Judgment affirmed.

---

[4] We observe that the trial court declined to impose the doctrine of unclean hands for different reasons than those stated above. (**See** Trial Ct. Op., at 7). However, it is well-settled that "[t]his Court may affirm the trial court's decision on any basis supported by the record." **Barren v. Commonwealth**, 74 A.3d 250, 254 (Pa. Super. 2013) (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/21/2015</u>